Filed April 22, 1892.

———————◆———————

No. 14,789.

THE CHICAGO, ST. LOUIS AND PITTSBURGH RAILROAD
COMPANY *v.* FRY, ADMINISTRATRIX.

RAILROAD.—*Personal Injuries.* — *Defective Appliance.* — *Knowledge of Company.* — *What Complaint Must Aver.*—In an action against a railroad company to recover damages for injuries resulting in the death of brakeman, which injuries it is averred in the complaint were caused by the defective condition of a brake-staff, it is essential, to authorize a recovery, that the plaintiff should allege and prove that the defect which caused the injury was known to the defendant, or was such as with reasonable diligence should have been discovered.

SAME.—*Knowledge of Defect.—Special Findings.*—There can not be a recovery for the plaintiff in such an action, where the special findings of the jury not only do not state facts from which an inference of notice of the defect arises, but on the contrary states that upon inspections made at different times and places no defect was found in the brake-

The Chicago, St. Louis and Pittsburgh R. R. Co. *v.* Fry, Administratrix.

staff, and that such defects as existed could not have been discovered without taking the brake-staff off the car and striking it with a hammer.

SAME—*Defective Appliance on Foreign Car.—Inspection of by Defendant Company.*—Where the car with the defective brake-staff did not belong to the defendant, but to another railroad company, and was only temporarily in use by the defendant, and came to it loaded, the fact that the car had been in the possession of the defendant for nearly two weeks prior to the accident, was not of itself sufficient to charge the defendant with notice of the defects. The inspection which a company is required to make of a foreign car, tendered it by another company for transportation over its lines, must be made with reasonable care, so as to furnish its employees with reasonably safe appliances for use in the discharge of their duties, but it can not be held liable for hidden defects which could not be detected by such an inspection as the exigencies of traffic will permit.

SAME.—*Answer.—Ignorance of Defect by Defendant.*—A paragraph of answer was good as a special denial to the complaint, which averred that the car, with the defective brake, was a foreign car, etc., and that the defendant had no knowledge of the defect before the happening of the accident and could not have discovered it by careful examination.

SAME.—*Answer.—Inspection of Appliances by Employees.—Rules of Company.—Reply.*—A paragraph of answer was filed to the complaint which set out a rule of the railroad company requiring its brakemen to examine and know for themselves that the brakes, ladders, etc., which they were to use were in proper condition, and if not to put them in condition, or report for repairs. It was further averred that the decedent had knowledge of this rule, but was negligent in failing to make an examination of the brake-staff and report it out of repair before the car left the point of starting on the trip on which he was injured. Ignorance of the defect on the part of the defendant was also averred.

*Held,* that while the above paragraph of answer was little more than a special denial of the complaint, it was not error to overrule a demurrer to the same.

*Held,* also, that a paragraph of reply to said paragraph of answer was good which showed that the deceased was not furnished with the appliances, nor had he the opportunity, to make the inspection required by the rules of the company.

From the Cass Circuit Court.

*N. O. Ross* and *J. C. Nelson,* for appellant.
*G. N. Funk* and *D. C. Justice,* for appellee.

MILLER, J.—The appellee, as the legal representative of

The Chicago, St. Louis and Pittsburgh R. R. Co. v. Fry, Administratrix.

Daniel L. Fry, deceased, brought this action against the appellant to recover for injuries received by him while in the service of appellant as brakeman on a freight train, which caused his death.

The complaint charges that one of the cars of the defendant's train upon which the decedent was employed was what is called a "gondola" car, upon which the brake-staff was located at the end of and close to the edge of the car; that this brake-staff was dangerous and unsafe to be used for the purpose for which it was intended and provided, by reason of its being too light, weak and fragile, and for the further reason that at a point on the same at or near the ratchet wheel at the bottom surface of the deck or floor of the car it was cracked and broken on opposite sides to the depth of one-half an inch on each side, leaving only one-half inch in diameter of sound iron at that point; that it had been so cracked and broken for two months before the plaintiff's decedent was injured, and that the defendant had notice of its defective and unsafe condition for that length of time; that the said Daniel L. Fry was ignorant of its defective and dangerous condition, and was injured without fault on his part while in the discharge of his duties.

The defendant answered the complaint by a general denial and two affirmative paragraphs, which will be noticed hereafter.

The cause was submitted to a jury, and under the directions of the court a special verdict was returned, upon which a judgment was rendered in favor of the plaintiff.

The action of the court in rendering judgment in favor of the plaintiff and against the defendant is the only error assigned by the appellant in this court.

It is contended by the appellant that the facts found in the special verdict are insufficient to support a judgment against the company. The omissions pointed out are (1) that it does not find that the defendant had notice of the de-

fects in the brake-staff, or (2) that the decedent was ignorant of them.

It is also claimed that the plaintiff did not make out, but departed from, the case stated in the complaint.

The findings, so far as they relate to these questions, are as follows :

"*First.* We find that the defendant, on the 22d day of December, 1886, was the owner and was operating a railroad from Chicago, Illinois, to Columbus, Ohio, and passing through the State of Indiana, known as the Chicago, St. Louis and Pittsburgh Railroad, and had been operating the same for more than two years immediately preceding that time.

"*Second.* That on said day, and for about two years prior thereto, Daniel L. Fry, the decedent, had been and was in the service of said defendant as a brakeman, serving upon its freight trains, and that on said day, at about 3:25 o'clock in the morning, he started out on the second section of train No. 40, as rear brakeman, from Logansport, Indiana, and destined for Bradford Junction, in the State of Ohio.

"*Third.* That it was his duty as such brakeman to set brakes upon said train at all regular stopping places for said trains, and when so directed by the conductor and when brakes were called for by the engineer running the train.

"*Fourth.* That said Daniel L. Fry continued on said train, serving as rear brakeman, until the train reached a point about one and one-half miles west of the station of Woodington, in the State of Ohio, when the engineer called for brakes, and said Fry, who was then in the caboose, went forward, in answer to said call, for the purpose of setting the brakes, and that while in the act of setting the brake on the rear end of the first car in front of the caboose, the brake-staff of the brake that he was attempting to set broke off immediately under the ratchet wheel, and that said Fry was thereby caused to fall upon the track, and was run over by

the wheels of the caboose and injured, so that in about five hours thereafter he died from said injuries.

"*Fifth.* We find that the car upon which the brake-staff was fastened that broke and caused said Fry to fall and receive said injuries, was not owned by the defendant, but was a foreign car, owned by the Columbus, Hocking Valley and Toledo Railroad Company, and that on the 9th day of December, 1886, the defendant received said car from the owner, at Columbus, Ohio, loaded with coal, to be transported to Washington Heights, in the State of Illinois, and there delivered to the Chicago and Rock Island Railroad Company to be unloaded, and when returned to the defendant to be by it transferred back over its road to the owner at Columbus, Ohio; that said car, so loaded, was brought by the defendant as a part of one of its trains to Logansport, Indiana, on the 10th day of December, 1886, where said car was kept for repair until the 15th of said month, on which day it was taken to Washington Heights and delivered to said Chicago and Rock Island Railroad Company, in whose possession it remained until the 21st day of said month, when it was returned by the said company to defendant and brought to Logansport, Indiana, where it arrived at eleven o'clock P. M. of said day, and that on the next morning, the 22d, said car composed a part of the second section of train No. 40, occupying the position of the first car in front of the caboose, and started for Columbus, Ohio, about 3:25 A. M., with said decedent upon it, and that it proceeded in that position until the happening of the accident, as hereinbefore found.

"*Sixth.* That the defendant has at all times since it commenced operating said railroad, kept persons employed at Columbus, Ohio, Logansport, Indiana, and Washington Heights, Illinois, whose duties have been to inspect all cars passing over the road that stopped at either of said points, and when found to be out of order to report them for repairs, and that no car, when so reported, was permitted to

go out upon the road until repaired, and that said car was so examined by said persons when it was received at Columbus, Ohio, on the 9th day of December, 1886, and again on the 10th day of the same month at Logansport, Indiana, and again at Washington Heights, Illinois, on the 21st, and at Logansport again on the evening of the same day in the same month, and that in all said examinations said car was found to be in apparent good order by the persons making such inspections, except in the inspection at Logansport on the 10th, when said car was reported out of order and was repaired, and was again inspected after said repairs were made, and that in none of said inspections was any defect found in the brake-staff that broke on said car, and said car was not reported for repairs, or that it was out of order, except on the 10th, as above found, which defect was not in the brake-staff.

"*Ninth*. We find that said brake-staff was one and one-fourth inches in diameter, which was the size used for such purposes, and was of sufficient size, if sound; that said brake-staff, at the time of said accident, showed that it was cracked on each side and opposite each other to the depth of about one-fourth or three-eighths of an inch, and that the iron so cracked presented a rusty appearance, which is the only evidence before us of the length of time said cracks had been there; and we find that said cracks or breaks of said brake-staff were the cause of its breaking and causing the injuries received by said decedent.

"*Thirteenth*. We find that said brake-staff was weakened and cracked on each side, so that the defect could not have been discovered without taking it off the car and striking it with a hammer, and that this was not done in any of the inspections made; that at 3:25 o'clock in the morning of the day that Daniel L. Fry lost his life, and when the train started out from Logansport, it was dark and cloudy, and a snow storm was prevailing, and that it continued until Fry fell from the train and was killed, about 11 o'clock A. M. of

the same day; and that said Fry was called by the call boy to go out on said trip about one-half hour before train time."

In order to recover against the defendant it was essential that the plaintiff should allege, and prove, that the defect which caused the injury was known to the defendant, or was such as with reasonable diligence ought to have been discovered. *Pittsburgh, etc., R. W. Co.* v. *Adams,* 105 Ind. 151 (163); *Sack* v. *Dolese* (Ill.), 27 N. E. R. 62.

There is no finding in the verdict, in express terms, that the defendant had notice or knowledge of the defective condition of the brake-staff that caused the accident; the utmost that is claimed in that direction is, that it states facts, which raise an inference of knowledge, or of an opportunity, by the use of reasonable diligence, to acquire knowledge of such defects.

It is the office of a special verdict to find the ultimate facts, and not merely to state the evidentiary facts. The court can only draw such inferences as irresistibly result from the facts found by the jury. *Gordon* v. *Stockdale,* 89 Ind. 240; *Locke* v. *Merchants' Nat'l Bank,* 66 Ind. 353; *Stix* v. *Sadler,* 109 Ind. 254.

It requires no study of the findings of the jury to determine, not only that they did not find facts from which an inference of notice of the defects arises, but that on the contrary they find that upon inspection made at different times, and places, no defect was found in the brake-staff, and that such defects as existed could not have been discovered without taking the brake-staff off the car and striking it with a hammer.

It is insisted by the counsel of the appellee, that the fact that the car had been in the possession of the company for nearly two weeks was of itself sufficient to charge the company with notice, and they cite in support of the proposition *Fay* v. *Minneapolis, etc., R. W. Co.,* 30 Minn. 231.

There is this important difference between these cases. In that case the jury found that the company had notice of the

defect, and the court say in the opinion that the " defect in the car was readily discernible upon proper inspection."

The car which occasioned the injury having been received by the company loaded, and in the regular course of business, from another company for transportation over its lines, the receiving company owed to its employees the duty of making proper inspection and giving notice of its defects, if any were found. *Cincinnati, etc.. R. R. Co.* v. *McMullen,* 117 Ind. 439. If the car came to it with defects visible or discoverable by ordinary inspection, it should either have refused to receive it, or immediately repaired it sufficiently to have made it reasonably safe.

The inspection which a company is required to make of a foreign car tendered it by another company for transportation over its lines, is not a merely formal one, but should be made with reasonable care so as to furnish its employees with reasonably safe appliances for use in the discharge of their duties. Patterson R. W. Ac. Law, sections 290, 291.

In the late case of *Missouri Pacific R. W. Co.* v. *Barber,* 44 Kan. 612, the court cites with approval from the opinion in *Gutridge* v. *Missouri Pacific R. W. Co.,* 94 Mo. 468, the following: " The defendant contends that it had a right to assume that the car, being a foreign one, was reasonably safe and fit for the uses for which it was being used. We do not agree to the proposition as thus broadly stated. If the car had obvious defects which rendered it unfit for use, defendant was under no obligation to receive it, and should not have received it. Cars coming from one road to another must necessarily be subjected to wear, and are liable to be rendered unfit for use in the course of transportation, and this must be known to the receiving company. It is but the result of the most common observation. While it is not incumbent on the receiving company, on the receipt of the car, to make tests to discover hidden defects, in the construction, or in the materials used in the construction, still it is bound to inspect foreign cars just as it would and

The Chicago, St. Louis and Pittsburgh R. R. Co. *v.* Fry, Administratrix.

is required to inspect its own, after they have been in use. This duty devolves upon the company as much in the one case as in the other."

The company ought not, however, to be held liable for hidden defects which could not be detected by such an inspection as the exigencies of traffic will permit. Patterson R. W. Ac. Law, section 290.

There is nothing in the special verdict indicating that there was anything unusual in the appearance of the car when it was received by the defendant company at Columbor; that called for any special inspection of its condition; if it was old, dilapidated, or obviously defective, a corresponding duty of careful inspection devolved upon the defendant, but we find nothing in the pleadings or verdict of the jury indicating that such was the case.

If the inspections to which the car was subjected were not thorough, that also was a proper subject of allegation and proof.

This is not one of the cases where proof of the accident is *prima facie* evidence of negligence. *Duffy* v. *Upton*, 113 Mass. 544; *Sack* v. *Dolese, supra.*

We are of the opinion that the verdict does not show either notice to the defendant of the defect complained of, or state facts from which we can infer notice, and for that reason the judgment of the court will have to be reversed.

We do not think the special verdict shows that the decedent is chargeable with notice of the defects in the brake-staff on account of which he was injured. Taking into consideration the nature and location of the defect, and his limited opportunities of inspection, it is highly improbable that he should have discovered the defects.

The conclusion at which we have arrived renders it unnecessary for us to examine and pass upon the claim made by the appellants that the case made by the verdict does not correspond with the allegations of the complaint.

The appellee assigns cross-errors upon the ruling of the

court in overruling the demurrers to the second and third paragraphs of answer, and sustaining the demurrer to the second paragraph of reply, which was addressed to the third paragraph of answer.

The second paragraph of answer states the same facts that are set forth in the fifth, sixth and eleventh findings of the jury, with the additional averment that the defendant had no knowledge of the defect before the happening of the accident, and could not have discovered it by careful examination.

This paragraph was good as a special denial of the complaint, and it was not error to overrule the demurrer.

The third paragraph of answer sets out a rule of the railroad company requiring its brakemen to examine and know for themselves that the brakes, ladders, etc., which they were to use were in proper condition, and if not to put them in condition, or report for repairs.

It is averred that the decedent had knowledge of this rule, but was negligent in failing to make an examination of the brake-staff and report it out of repair before the car left Logansport on the trip upon which he was injured. It also avers that the defendant was ignorant of the defect in the brake-staff.

This paragraph is little more than a special denial of the complaint, but we are satisfied that overruling the demurrer to the same was not erroneous.

The second paragraph of reply to the third paragraph of answer charges that the train, of which the defective car formed a part, left Logansport at 3 o'clock A. M. of the day the decedent was injured; that he was called by one of the "call boys" of the defendant thirty minutes before the leaving time of the train; that upon arriving at the train his time was occupied in cleaning lamps and displaying rear signal lanterns, and examining the couplings of the cars, and loosening the brakes of the train so that it could be started, all of which was part of his duties as rear brakeman, and

The Chicago, St. Louis and Pittsburgh R. R. Co. v. Fry, Administratrix.

that, thereby, all his time was taken up until the train started; that there were thirty-eight cars in the train, and that it takes from twenty to thirty minutes to properly inspect a single freight car; that no appliances were furnished the decedent with which to make an inspection, and no time given him to inspect prior to the time the train started; that the morning was dark and cloudy, and the defendant had no lights in their yards, except the ordinary brakeman's lantern, and that the defect could not have been discovered by an inspection made with a lantern in the night time. It is also averred that a reasonable inspection made by the regular inspectors would have discovered the defects, but that the defendant negligently failed to have it so inspected; that from the time the train left Logansport the defect was hidden from the decedent, and that he was engaged in the performance of his duties, and had no opportunity to make an inspection on account of the continuous passage of the train.

A demurrer was sustained to this paragraph of reply.

We are of the opinion that the duties put upon the brakeman by the rule in question adds very little to the duties placed upon him by the rules of law. Something more than the mere making of a rule requiring brakemen to make inspection of the implements and machinery used by them, is necessary in order to shield the master from the consequences of a failure to perform the duties of furnishing safe implements and machinery imposed by law upon him. He must have the appliances and opportunity for making such inspection. The duty imposed by law upon railway companies of furnishing reasonably safe cars and appliances for the use of brakeman in its employ, is for the protection of life and limb, both of which are sacred in the eye of the law, and public policy forbids that the master should be, in any manner, relieved of that duty without providing for the performance of the same by some other agency as fully as required of the master.

The paragraph of reply under consideration shows very

clearly that the deceased had neither the appliances nor the opportunity to make the inspection required by the rules of the company, and he was thereby relieved of that duty in so far as it was imposed upon him by such rules.

In our opinion the court erred in sustaining the demurrer to the second paragraph of reply.

Some other questions are presented by the cross-assignment of errors, but inasmuch as they are extremely unlikely to occur upon another trial we decline to consider them.

The judgment is reversed, with instructions to overrule the demurrer to the second paragraph of reply, all costs against the appellant back to the ruling upon the demurrer to the reply.

Filed Oct. 30, 1891; petition for a rehearing overruled April 28, 1892.