term "due process of law" by Judge Earl in Stuart v. Palmer, 74 N. Y. 183; and, tested by it, has this relator been deprived of his liberty by "due process of law"? Let us consider what the effect of such an adjudication would be. By the designation of a court in another state of a commissioner, he may set up his office here and his court, and by virtue of his authority imprison any one of our citizens. This commissioner, if he happens to be a notary public, may be one of over four thousand of our citizens. If he be not a notary, he may be one of the six and a half million inhabitants of this state, whether citizen or alien. He even may be an inhabitant of any of the United States or of a foreign country. Section 914. By the Code provisions hereinbefore referred to, without any knowledge of his character or intelligence or citizenship, the legislature stamps its authority on such an individual, establishes a court over which he shall be judge, and bestows as an incident of his judicial office the grave power to punish for contempt. This brief recital of possibilities makes clear the arbitrary character of such legislation, and its reckless disregard of the liberty of our citizens. I am impressed in reaching this conclusion by the wisdom of Mr. Justice Miller in leaving "the meaning of the term 'due process of law' to be evolved by the gradual process of judicial inclusion and exclusion, as the cases presented for decision shall require, with the reasons on which such decisions may be founded." Davidson v. Board, 96 U. S. 97.

There is a decision of this court on the question here presented. In Re Bloomingdale (Feb., 1879) 1 N. Y. Law Bul., it was held, without further statement of reasons, that a similar commitment was void and without authority. I am but following that ruling. As, however, the determination of the question presented is far-reaching and important in its consequences, the relator's counsel must stipulate to argue the appeal, during the present term of the appellate division, from any order that may be entered on this decision.

The prisoner is discharged.

---

(23 Misc. Rep. 527.)

### McKNIGHT v. BROOKLYN HEIGHTS R. CO.

(Supreme Court, Trial Term, Kings County. May, 1898.)

1. INJURY TO EMPLOYE—CONTRIBUTORY NEGLIGENCE.

One of the rules of a street-railway company provided that "drivers must examine the feet of horses before starting. They will also examine the harness." Held, that the examination contemplated by this rule was not a thorough inspection, but such a general examination as the time given for the purpose would allow; and that, where a driver was killed by reason of the breaking of a hamestrap, the question as to his negligence in examining the harness was properly submitted to the jury.

2. SAME—FELLOW SERVANTS.

A driver of a street car is not a fellow servant of the "head changer" and his assistants, whose duty it is to inspect and repair the harnesses of the company, so as to exempt the railroad company from liability for the driver's death, caused by their negligence in failing to inspect and replace a defective hamestrap.

Action by Isabella F. McKnight, as administratrix, etc., against the Brooklyn Heights Railroad Company. Verdict for plaintiff

by consent, subject to a motion to set it aside and to dismiss the complaint on all the evidence.     Motion denied.

Motion to set aside a verdict for the plaintiff, and to dismiss the complaint on all the evidence, the verdict having been taken by consent subject to such a disposition of the case.    The action was for damages for negligence.

While the plaintiff's intestate was driving a single horse to one of defendant's street cars, the harness slipped back off the horse by the breaking of the lower hamestrap, and thus freed, the horse pulled the deceased over the dashboard to the ground by the lines, where he was run over and killed by the car.    The strap broke in its crease on the ring or eye of the hame.    It was worn and cracked at that point on the inside, from wear on such ring or eye.    The defect could be seen upon an inspection of the harness in detail when off the horse, but it was a question of fact whether it was visible when the harness was on the horse, and the strap buckled up tight.    The horses were brought out to the drivers harnessed by the stablemen, and ready to start off at once or very soon. The "head changer" of horses, and his assistants in the stable, were charged with the duty of cleaning and oiling the harness, and making inspection thereof in detail in the stable, and the defendant kept on hand all the time an ample supply of spare new hamestraps.    They were in the custody of the "head changer," locked in a closet, and ·his duty was to give them out as they were called for, and as they became necessary to replace old straps.    He was authorized to be the judge of such necessity in each case if he chose not to take the word of others.    Printed rules of the company had long been promulgated and established, and furnished to each driver and conductor.    One of the rules set down for drivers was as follows: "Drivers must examine the feet of horses before leaving the depot to ascertain if any shoes are loose, in which case they must require the same to be tightened before starting.    They will also examine the harness."

C. J. Patterson, for plaintiff.

Thos. L. Hughes, for defendant.

GAYNOR, J.    How much of an examination of the harness could be made by the drivers was a question of fact.    They were not by the company's rule made responsible for the consequences to themselves of all defects in the harness, but only of such defects as the said rule contemplated, viz., such as could with reasonable care be found by such an examination as they were given opportunity to make.    The master cannot shift upon his employés his responsibility for injuries to them from defects in appliances from wear and tear, by devolving on them the duty of inspection, without giving them time and opportunity to make such inspection as would reveal the defects.    In this way the question of the negligence of the deceased was properly submitted to the jury.    It is true there was a supply of new hamestraps on hand, and that the drivers could call for them, and in that respect the case is like that of Cregan v. Marston, 126 N. Y. 568, 27 N. E. 952; but it is unlike that case in that thorough inspection was necessary, but the drivers were not given by the master opportunity for thorough inspection, but only for a cursory or general inspection.    Hence, their contract of service did not require them to make, and be responsible for the consequences to themselves of not making, a thorough inspection.    The duty of a particular inspection in detail, was specially devolved upon the head changer and his assistants in the stable. The jury have found that the latter could not miss noticing the defect from wear in the hamestrap, if they had carefully inspected

the strap while it was unbuckled, as was their duty to do, but that a driver could not be expected to see such a defect with the exercise of due care under the limited conditions of inspection allowed to him.

The only question left in the case, therefore, is whether the negligence of the head changer and his men, which has been found by the jury, was in law the negligence of the master, or only of fellow servants of the deceased.

The first mention I find in this state of the law of negligence of fellow servants is in 1844 in Brown v. Maxwell, 6 Hill, 592, and the next is in 1849 in Coon v. Railroad Co., 6 Barb. 231; Id., 5 N. Y. 492. It seems to me that it is more difficult now for a trial judge to apply the rule to a given case than it was then.

The rule is that a master must use reasonable care to provide his servants with safe machines and appliances in their work, and then that he must continue to use reasonable care by oversight and inspection to keep them safe, unless such oversight and inspection belong by virtue of their contract of service, impliedly or expressly, to the servants using them.

This being the duty of the master in respect of oversight and inspection, what amounts to a discharge of it? Manifestly, the rule must be held to be either that by employing competent fellow servants for such oversight and inspection, the master discharges his said duty in full, or else that his said duty is not discharged unless such fellow servants actually exercise such oversight and inspection with reasonable care. Either the master's said duty of reasonable care is fulfilled by his employment of such competent servants, or it is not. In the former case, their negligence would not be his; in the latter case, it would be. I suppose a trial judge may say with due submission that it seems to him that the reported decisions in this state vacillate between these two propositions.

In the case at bar, the defendant did employ suitable servants to inspect the harness in detail in the stable. Is that all that its duty of reasonable care required of it, or is their negligence its negligence?

The conflict of the cases upon this question may be illustrated by the citation of a few of the leading ones on each side.

In Kirkpatrick v. Railroad Co., 79 N. Y. 240, and Fuller v. Jewett, 80 N. Y. 46, it is held that the negligence of servants of a railroad company, whose duty it is to inspect and repair the engines from day to day, is not the negligence of fellow servants, but of the master, in respect of the engineers.

In Bailey v. Railroad Co., 139 N. Y. 302, 34 N. E. 918, the same is held of car inspectors from station to station, in relation to the brakemen. This is an obscure case as reported. The rule of the company quoted in the opinion puts the duty of inspection upon the conductor and "the men." If this means the trainmen, how could the plaintiff, who was a brakeman, recover?

In Woods v. Railroad Co., 11 App. Div. 16, 42 N. Y. Supp. 140, an expressman employed by the defendant was hurt in his express car by reason of the violent impact with it of another car which was

moving up to be coupled with it.    The cause was that the brake of the moving car was defective from lack of inspection.    The duty of inspection was not upon the train hands, but upon car inspectors. I understand the opinion to say that if the duty of inspecting and adjusting the brakes had been upon the train hands, the plaintiff could not recover, as their negligence would be to him that of fellow servants, and not of the master; but that the negligence of the other set of servants upon whom the duty was put, was not to him that of fellow servants, but of the master.    As the plaintiff had nothing to do either with the operation of trains, or with the inspection of cars, and therefore belonged no more to the one set than to the other, I do not for the moment perceive the ground for this distinction.    But what is to the purpose is the decision that the negligence of the inspectors was that of the master.

In Galasso v. Steamship Co., 27 App. Div. 169, 50 N. Y. Supp. 417, it is held in respect of wear and tear to the catch of a bucket used in hoisting chalk from the hold of a ship, that the defendant did not fulfill its duty by employing a servant to "make all necessary repairs."    "It could not delegate its duty to keep its apparatus safe," says the court.

The decisions of which the foregoing are typical, necessarily rest upon the proposition that the master does not fulfill his said duty of reasonable care by oversight and inspection, and discharge himself from liability thereunder, by employing competent servants to do that service, but that on the contrary his said duty still continues through them, and their negligence therein is his negligence.

And now let it suffice to cite a few decisions from those arrayed on the other side.

In Malone v. Hathaway, 64 N. Y. 5, by the giving way of decayed wooden joists which supported a mash tub in the defendant's brewery, a workman in the brewery was killed.    The defendant had a competent carpenter employed in the brewery all the time to keep the fixtures and appliances in a safe condition.    It was held that negligence by him in that duty would be that of a fellow servant, and not of the master.    The brief opinion of the two able dissenting judges helps to make the point precise.    The case was sent to the jury on the question whether there was any negligence by the carpenter, with the instruction that his negligence would be that of the master, and for this the judgment for the plaintiff was reversed.

In Webber v. Piper, 109 N. Y. 496, 17 N. E. 216, the plaintiff while working in the defendant's factory was injured by one of the circular saws by reason of its dullness which made it dangerous. There were present for use duplicate saws, and there was an employé whose duty it was to change the saws as they grew dull, and to set and sharpen those taken out.    By his neglect to repair the particular saw at the request of the plaintiff, the latter was hurt. The court said that "the master's duty was performed when he furnished suitable saws and the means and conveniences for keeping them sharp and properly set," and that "the negligence, if any, was that of Myers, whose duty in sharpening and setting the saws was that of a fellow servant."

In Schulz v. Rohe, 149 N. Y. 132, 43 N. E. 420, it is held that the negligence of "an engineer, employed for the purpose of keeping the machines in a manufacturing establishment in order," in failing to repair, is the negligence of a fellow servant, and not of the master, in relation to the servants who operate the machines.

The foregoing sets of cases serve to mark the conflict in the decisions.

The notion that the rule varies according to the complexity of the machine or appliance to be inspected, is without any foundation whatever. The rule ceases when the machine or appliance is so simple that it needs no inspection other than that of the servant who uses it, or in any case when the duty of inspection is expressly upon him by the contract of service.

Nor have I any notion that it can be suggested that there is, or can be upon principle, one rule on this head for steam railroads, and another for other employments. If the negligence of mechanics employed by the common master to inspect and keep safe the machines in a factory, is the negligence of fellow servants in relation to those who operate them, why is not the same the case between those employed to inspect and keep safe locomotive engines or cars, and the engineers or brakemen who run them?

There are other cases which are sometimes cited in the controversy, but which seem to have in fact no bearing upon it whatever. In Crispin v. Babbitt, 81 N. Y. 516, the negligence of the fellow servant was not in the performance of any duty due from the master to the servant. It was the negligent act of a servant for which the master could be liable to the person hurt only under the rule of respondeat superior, which has no application to the question of negligence between master and servant. It relates only to injuries to a stranger by a servant. The same was the case in Cullen v. Norton, 126 N. Y. 1, 26 N. E. 905, and Loughlin v. State, 105 N. Y. 159, 11 N. E. 371. The negligence of the fellow servant was in the doing of the details of the very work the servants were all engaged in, and not in the fulfilling of any duty of the master to the servants in respect of the materials or appliances. This is also obvious in Soderman v. Kemp, 145 N. Y. 427, 40 N. E. 212. In Cregan v. Marston, 126 N. Y. 568, 27 N. E. 952, in hoisting buckets of coal from the hold of a ship to the dock, the rope called a "fall" broke. A fall in such use wears out in a short time. For that reason the master had at hand for the use of the servants a supply of spare falls, and it was the duty of each and every of them to see that new falls were substituted as it became necessary. Their neglect to do so was not his negligence. In the scaffold cases (Butler v. Townsend, 126 N. Y. 105, 26 N. E. 1017; Judson v. Village of Olean, 116 N. Y. 655, 22 N. E. 555) the master did not build the scaffold, but the building of it was a detail of the work of the servants themselves. It was a part of their work to build it for their own use. The master was no more liable for their negligence to one another in building it, than he would be if they negligently dropped tools, or hods, or bricks, or boards on one another. On the other hand (and to show the distinction), in Benzing v. Steinway, 101 N. Y. 547,

5 N. E. 449, the servants did not construct the platform or skid which broke, but the master furnished it to them ready made. Page 553, 101 N. Y., and page 451, 5 N. E.    It is to be assumed that the decision was based upon this fact, rather than the general statements of the opinion.

In the case at bar, it seems to me that it is common knowledge that there are certain defects from wear and tear in the straps, buckles and fastenings of a harness which may not be discovered with the exercise of reasonable care when it is upon a horse, especially by a cursory or limited examination; and the jury have so found.    It is an adage that no horseman should get into a saddle which he has not himself buckled on.    It follows that the master owed to the drivers the duty of reasonable care in the inspection of harness in the stable.    In pursuance of this duty it employed competent servants to make such inspection.    That did not fulfill its said duty, but still left it responsible for the actual making of such inspection, and liable to the drivers for any negligence of its said other servants in the making thereof.

The motion to set aside the verdict is denied.