HARVEY J. KARNS, *Appellee,* v. THE ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY, *Appellant.*

No. 17,634.

SYLLABUS BY THE COURT.

1. MASTER AND SERVANT—*Defective Appliances—Rules—Inspection by Employee—Contributory Negligence.* A rule of a railway company requiring all brakemen to inspect carefully at every stop the coupling apparatus and other appliances and to report to the conductor anything found out of order is subject to a reasonable interpretation, measured in degree by the opportunity to examine and the character of the existing defect.

2. —— *Same.* Where such a rule is in force, and a brakeman is injured by a defect in an appliance of which he is ignorant but which he might have discovered by inspection, the question of his contributory negligence is generally for the jury to determine, taking into consideration the rule and the circumstances shown by the evidence.

3. ——— *Same.* Under the facts in this case the defendant could not, by adopting such a rule, thereby relieve itself from liability for a failure to furnish plaintiff with reasonably safe appliances, the jury having found upon sufficient evidence that it was not practicable for plaintiff by inspection to discover the defect.

4. ——— *Same.* The evidence is held sufficient to warrant a finding that plaintiff was not guilty of contributory negligence.

5. ——— *Same.* The plaintiff is held not to have assumed the risk of injury from a defect in a coupling and drawbar of which he was ignorant and which he had no reasonable opportunity to discover by inspection.

Appeal from Harvey district court. Opinion filed May 11, 1912. Affirmed.

*William R. Smith, Owen J. Wood,* and *Alfred A. Scott,* for the appellant.

*Ezra Branine,* and *Harry W. Hart,* for the appellee; *R. R. Vermilion, Earle W. Evans,* and *Jos. G. Carey,* of counsel.

The opinion of the court was delivered by

PORTER, J.: This is an appeal from a judgment recovered by the plaintiff for $1000 damages for an injury to his hand incurred while in defendant's employ as a brakeman. At the time of the injury he was head brakeman, twenty-four years old, with eight months' experience in the service. The accident happened about ten o'clock in the forenoon. An engine and three cars were detached from a train for the purpose of picking up four cars on a spur track. The last two of these four were foreign cars, and the rear one was in bad order, the drawbar and timbers of the coupling having been pulled out and the car fastened to the next car by a chain. After the conductor had coupled the string of four cars to the others the engine started towards the switch. The conductor directed the plaintiff to get up on top of the cars and release the brake on the rear car. Plaintiff climbed up

the side ladder on the third or fourth car from the engine, walked on top of the train to the rear car, and released the brake.  He then walked forward to the end of that car and climbed down the ladder between that and the next car.  These were the foreign cars. When he was at the bottom of the ladder the engine stopped, the slack ran up, the two cars came together, and because of the absence on the rear car of the drawbar and timbers his hand was caught and crushed.

The defense was contributory negligence and assumed risk.  The plaintiff testified that when the cars were coupled to the others he was about three car lengths from them and did not know until he was injured that there was a defective coupling.  The jury returned answers to a number of special questions, including the following:

"Question 3.' Had plaintiff paused a moment and made use of his eyesight and looked down in front of him between the cars in question before he descended, would he have observed a dangerous and defective condition in and about the coupling apparatus between said cars?  Answer 3.  Possible, yes; but not practicable.

"Question 4. What, if anything, would have prevented plaintiff from seeing the character and condition of the coupling apparatus between the cars in question if he had looked at them before he descended from the top of the car?  Answer 4.  Not anything.

"Question 5. To one observing the condition of the coupling apparatus between the cars in question would it appear obviously dangerous for one to go in between said cars and climb up or down the ladder while the cars were in motion, and liable to stop at any moment? Answer 5.  Yes.

"Question 6. In the book of rules furnished to and in use by plaintiff and other employees of defendant at and prior to the time in question, was it provided by rule 417 that 'Brakemen should inspect carefully at every stop the condition of the journals, handholds, stirrups, ladders and coupling apparatus, and if anything in connection therewith is out of order it must be immediately reported to the conductor.  This rule

Karns v. Railway Co.

will apply to cars in their train as well as those handled
at stations in switching'?    Answer 6.    Yes."

The evidence justified the finding that the plaintiff
was in the exercise of reasonable care.    It seems un-
reasonable to say that he should have discovered the
defective condition of the drawbar and coupling by
looking down between the cars as he walked over them
on his way to the rear, or that before passing down
the ladder he should have stepped to the edge of the
roof of the car and looked down.    The jury evidently
meant by their answers that it was possible but im-
practicable for him to have discovered the dangerous
conditions in either manner.    His testimony was that
he went down the ladder with his face to the rear of
the train and that he was obliged to turn around in
order to use the ladder; and common observation
shows that this was the natural and the only prac-
ticable manner of getting down the ladder.

Under the facts shown in this case the defendant
could not, by adopting a rule requiring all brakemen
to inspect couplings and drawbars, thereby relieve
itself from the responsibility for a failure to furnish
its employee with reasonably safe appliances.    The evi-
dence shows that the employee had no reasonable op-
portunity to make the inspection required by the rule.
Cases cited, therefore, holding that employees whose
duties require them to inspect cars can not recover for
injuries caused by their failure to inspect, are not ap-
plicable.    A similar rule was said to be "subject to a
reasonable interpretation, measured in degree by the
opportunity to examine and the character of the ex-
isting defect." (*Myers v. Erie Railroad Co.*, 44 N. Y.
Sup. Ct., App. Div., 11, 14, 60 N. Y. Supp. 422, 423.)
In that case, notwithstanding the rule, a brakeman
was allowed to recover for an injury caused by a de-
fective appliance of which he was ignorant where he
had no opportunity to examine the appliance before he
used it.    In *McKnight v. Brooklyn Heights R. Co.*, 23

Misc. Rep. 527, 51 N. Y. Supp. 738, it was held that
the examination contemplated by a similar rule was
not a thorough inspection, but such a general one as
the time given for the purpose allowed, and that the
question of contributory negligence was for the jury
to determine, taking into consideration the rule and
all the circumstances in evidence. In *The Chicago,
St. Louis and Pittsburgh R. R. Co. v. Fry, Administ-
tratrix*, 131 Ind. 319, 28 N. E. 989, the Indiana court
used this language:

"We are of the opinion that the duties put upon the
brakeman by the rule in question adds very little to the
duties placed upon him by the rules of law. Some-
thing more than the mere making of a rule requiring
brakemen to make inspection of the implements and
machinery used by them, is necessary in order to shield
the master from the consequences of a failure to per-
form the duties of furnishing safe implements and ma-
chinery imposed by law upon him. He must have the
appliances and opportunity for making such inspection.
The duty imposed by law upon railway companies of
furnishing reasonably safe cars and appliances for the
use of brakemen in its employ, is for the protection of
life and limb, both of which are sacred in the eye of
the law, and public policy forbids that the master
should be, in any manner, relieved of that duty without
providing for the performance of the same by some
other agency as fully as required of the master."
(p. 329.)

In reference to a rule of the same kind it was said
by the supreme court of California:

"If the rule was utterly impracticable, or rendered
so by the mode and the conditions under which service
was required, and the servant is injured because not
following an impracticable rule, and can not, therefore,
maintain an action for damages, then the rule is
plainly not for the protection of the servant but of the
employer. It is a provision relieving the employer
from the obligations imposed upon him by law, to use
ordinary diligence in furnishing safe appliances with
which to work and safe conditions for the performance
of the service. So far as the rule has that effect it is

against public policy and void." (*Holmes v. Southern Pacific Co.*, 120 Cal. 357, 362, 52 Pac. 652.)

(See, also, *Louisville and Nashville Railroad Company v. Foley*, 94 Ky. 220, 227, 21 S. W. 866.)

A rule or special order of which the servant has notice may put upon him the duty of inspection, provided he is given reasonable opportunity to comply with it, but only to the extent to which such investigation is within his reasonable capacity. (*C. & A. R. R. Co. v. Merriman*, 95 Ill. App. 628; 1 Shearman & Redfield on the Law of Neg., 5th ed., § 217; 20 A. & E. Encycl. of L. 104.) The only opportunity the plaintiff had for inspecting the drawbar was when the string of cars passed him three or four car lengths away, or while he walked over the cars to get to the rear, or when he passed down the ladder. The jury have said that while it was possible it was not practicable for him to have made the discovery at these times, and the evidence seems to justify the finding. Applying the principles stated in the cases cited, there was no error in the instructions respecting plaintiff's duty under rule No. 417.

In 1 Labatt, Master and Servant, § 417, the author says that "such rules should receive a reasonable interpretation, and that the obligations of the servant should be determined with reference both to the character of the defect and to his ability to make an examination." The Alabama court has declared that such rules are inoperative so far as they contravene the principle which requires an employer to furnish and maintain suitable appliances, and the right of the employee to presume that this has been done. (*Louisville & Nashville R. R. Co. v. Pearson, Adm'r*, 97 Ala. 211, 12 South. 176.) We approve this doctrine and think it may be stated as a general rule that whether the failure of the servant to make the examination in compliance with the rules was negligence is for the jury to determine. (*Myers v. Erie Railroad Co.*, 44

N. Y. Supr. Ct., App. Div., 11, 60 N. Y. Supp. 422; *Galveston, H. & S. A. Ry. Co. v. Nicholson,* [Tex. Civ. App.] 57·S. W. 693.)

It is claimed that the court enlarged the issues by an instruction that if defective cars were required to be handled it was defendant's duty to warn its employees thereof, that the petition contained no averment of negligence in failing to notify plaintiff of the defective condition of the car, and that there is no finding that it was the company's duty to give such notice. We think the law imposed the duty and no finding of such fact was necessary in view of the other findings, and that since the duty was cast upon the defendant by the relation of master and servant it was not necessary to allege in the petition that such was its duty. Negligence always springs from some neglect of duty. To allege that defendant was negligent in failing to furnish plaintiff reasonably safe appliances and that by reason of his ignorance of the defect he was injured, assumes that the defendant was also negligent in failing to warn plaintiff of the defect. There is no claim that plaintiff was warned of the danger; and we fail to discover how the defendant could have been prejudiced by the instruction stating the duty of the defendant to warn its employees in case they were required to handle cars found upon inspection to be defective.

The findings and evidence to the effect that it was not practicable for plaintiff, in the situation in which he was at the time, to discover the defect which occasioned the injury, dispose of the defense of assumed risk as well as that of contributory negligence. (*Railway Co. v. Michaels,* 57 Kan. 474, 46 Pac. 938; *Railway Co. v. Bancord,* 66 Kan. 81, 71 Pac. 253; *Smith v. Railway Co.,* 82 Kan. 136, 107 Pac. 635.)

Finding 23 was as follows:

"Question 23. If you find for plaintiff then state in what the negligence of defendant on which you base

your verdict consisted.  Answer 23.  On a bad order car."

There was no request to have this answer made more definite, and in view of the evidence and the other findings it is apparent that the answer means that defendant was negligent in failing to furnish the plaintiff reasonably safe appliances with which to work.

Finding 27 was as follows:

"Question 27.  Was it obviously safer for plaintiff to go down on the side ladders of one of the cars in his train than to go down on the ladders on the end of the cars where the defective appliances were?  Answer 27. Yes, in this case."

The general verdict and the other special findings preclude the idea that the jury intended by this answer to find that it was obviously safer to the plaintiff for him to go down the side ladder instead of using the end ladder on the defective car.  It is the duty of the court to harmonize the special findings, if that can be done, with the purpose of upholding the general verdict.  The other special findings and the general verdict clearly show that the jury found that plaintiff did not know of the defective condition of the car.  If this were true he could not be negligent in using the first ladder he came to or any other which appeared to be convenient.  The defendant's motion for judgment upon the findings was properly overruled.

Considering the entire charge, the instruction respecting the proof of contributory negligence is free from the error which required a reversal in the Merrill case.  (*Railway Co. v. Merrill,* 61 Kan. 671, 60 Pac. 819.) The first instruction given required the plaintiff to prove his case by a preponderance of the evidence and expressly charged that "he must do this without its appearing that he was himself guilty of negligence which contributed directly or materially to his injuries."  No error appears in the admission of evidence or in the instructions.

The judgment is affirmed.