THE WESTERN UNION TELEGRAPH COMPANY v.
FRANK MORRIS.

**No. 13,147.** ( 73 Pac. 108.)

SYLLABUS BY THE COURT.

1. EVIDENCE— *Questions to an Expert.* In asking a question of an expert witness, it is necessary to base it upon an hypothesis of fact, either expressed in the question or founded in the evidence already before the jury, well recognized and easily grasped.

2. ———— *Facts Must be Stated Hypothetically.* An expert cannot be called upon to give an opinion on facts in his mind and undisclosed, or on matters in part within his observation and in part derived from others, but such facts must be stated to him hypothetically and his conclusion therefrom obtained.

Error from Jackson district court; MARSHALL GEP-HART, judge. Opinion filed July 10, 1903. Reversed.

STATEMENT.

DAISY E. MORRIS is the wife of the defendant in error. On the morning of December 4, 1895, she commenced to feel ill, having pain in her head and shoulders. This indisposition increased during the day, so that along early in the evening her husband telegraphed from Hoyt, Kan., which was near the place of his residence, to Doctor Dawson, a physician in North Topeka: "Come on the morning train and not fail. Answer." An error occurred in the transmission of this message, and Doctor Dawson was not informed thereby of the urgency of the case and did not respond on the morning train. Had he done so he would have arrived at eight o'clock. Another message in the morning caused him to go on the afternoon of the 5th, arriving there about five P. M., nine hours later than he would have done had the first message been properly transmitted and delivered. During the night of the 4th, and through the 5th,

Mrs. Morris's ailment rapidly increased in severity, and Doctor Dawson upon his arrival found her suffering greatly from an acute attack of peritonitis. He administered some remedies which gave her relief, and left after a stay of two or three hours. He again visited her on the 7th. Thereafter, and up to the 27th, he prescribed upon reports as to her condition brought to him by her husband. On the 27th of December she was brought to a hospital in Topeka, where a surgical operation was performed by Doctor McClintock, with the assistance of other surgeons, and her ovaries and Fallopian tubes were removed. This action was brought by the defendant in error to recover his expenditures for the services of surgeons, doctors, and nurses, and for his damages for the loss of time and services of his wife consequent upon the surgical operation. His theory was that the diseased condition of the ovaries and Fallopian tubes, which required the surgical operation, was caused by the acute peritonitis with which his wife was affected on the 4th of December and thereafter, which would have been cured had the message been properly transmitted and delivered, and thereby Doctor Dawson enabled to arrive nine hours earlier than he did.

It appeared in evidence that Mrs. Morris had suffered a severe attack of general peritonitis in 1892, following childbirth, and it is the theory of the telegraph company that the acute attack of peritonitis commencing on the 4th of December was not the cause of the diseased condition of the ovarian tract, but that it was the result of the antecedent diseased condition of that tract; that peritonitis is caused by the introduction into the peritoneal cavity of disease germs; that these germs may remain inactive, and therefore

innoxious, for an unlimited length of time in the ovarian tract until aroused by the proper exciting conditions, and then set up an inflammation in the peritoneal cavity. The evidence of the company showed that when the ovaries and Fallopian tubes of Mrs. Morris were removed they were found greatly diseased, the one on the right side of the body being nearly obliterated; that about both of them there had been built up a living membranous tissue from a quarter to one-half an inch thick, the same being organized and having blood-vessels through it. It was undisputed that the condition in which these ovaries were found could not have been brought about within the short period of time elapsing between the commencement of the attack on the 4th and the time of the surgical operation some twenty days thereafter; that the diseased condition of the ovarian tract, which, as the company claims, was the cause, and not the result, of the acute attack of peritonitis, had existed for months—probably years—prior to the last attack of peritonitis. The defendant in error had judgment in the court below, to reverse which this proceeding in error is prosecuted.

*Rossington, Smith & Histed,* and *George H. Fearons,* for plaintiff in error.

*S. B. Isenhart, Crane & Woodburn,* and *Waters & Waters,* for defendant in error.

The opinion of the court was delivered by

CUNNINGHAM, J.: Several grounds of error are alleged. We shall discuss but two. After having testified to the progress of the disease, so far as he had observed it, the following questions were asked of Doctor Dawson:

"I will ask you, doctor, if you had seen Mrs. Morris

at the time that her disease became acute, if, in your opinion, you could have cured her and prevented the operation that afterward took place?"

"Doctor, if you had been there to see this patient in time, that is, in the early inception of peritonitis, when it commenced, and could have or would have prevented these different stages which she went through with, state whether that, in your opinion, would have worked a cure in her case. Would that have saved this operation, in your opinion?"

These questions were objected to specifically because they called for the expression of an opinion by an expert without basing such questions upon a hypothetical statement of facts. The question asked was the one the jury was called upon to determine, and was only permissible because asked of an expert; but it is well established that in the putting of such questions the jury must be fairly informed what the facts are upon which the question is based and from which the conclusion is drawn. It is not proper to permit the witness to array in his mind facts, and then declare from such array his conclusions therefrom, because he may introduce into this list some things which are not facts—some things which would not be competent to be considered in arriving at his conclusion. The opposite party is entitled to know the things considered by the expert witness in arriving at such conclusion, in order that such party may introduce experts who will occupy the same standpoint and deduce their conclusions from the same facts as did the former expert. Now, in this case Mrs. Morris's acute condition had been in progress for more than twenty-four hours prior to the arrival of Doctor Dawson. Concerning this condition he had no knowledge whatever, except as he was told by others. As to what facts he considered in arriving at his opinion as an expert, whether those within

his own knowledge or those of which he had been informed, whether either, neither, or both, the jury were not informed, nor the opposing party advised. How could the jury know what weight to give to his conclusion, or the opposing party adequately meet it? It is true that where an expert witness has made it manifest that he is acquainted with all of the facts upon which an expert opinion is to be based, and such facts are fully disclosed, easily understandable, and undisputed, they may be made a basis for a question calling for the expression of an expert opinion, without again arraying them in the form of a hypothetical question. This would be so because such facts could be easily grasped by the jury, and availed of by the other party in presenting a hypothetical question to another witness. The general rule was announced in *Erastus Tefft v. Hardin H. Wilcox*, 6 Kan. 46:

"An expert cannot give his opinion on the case under trial when the facts are controverted; but counsel must put to him a hypothetical case, and ask his opinion upon such case."

It was held in *Burns, Executor, v. Barenfield et al.*, 84 Ind. 43, 48:

"It is the clear right and duty of the jury to judge of the truth of the facts upon which the opinion of the expert is based. If his opinion is based upon what he may suppose he knows about the case, upon facts, it may be, altogether irrelevant and unknown to the jury, it would be impossible for them to pass upon the truth of the facts upon which the opinion may be based, or to apply the opinion of the expert to the facts. Neither court nor jury can know the facts upon which the opinion rests. It is obvious that, where the expert delivers his opinion from what he supposes he knows about the case, he must assume and exercise both the functions of the court and the

jury—he determines that what he knows is both relevant and true.  The relevancy of the facts must be determined by the court, their truth by the jury.  The witness cannot pass upon such questions.''

In Rogers on Expert Testimony, at page 37, it is said :

''As expressed in one of the opinions, 'a question should not. be so framed as to permit the witness to roam through the evidence for himself, and gather the facts as he may consider them to be proved, and then state his conclusions concerning them.'  And the language in another case is as follows : 'The questions to him must be so shaped as to give him no occasion to mentally draw his own conclusions from the whole evidence, or a part thereof, and, from the conclusions so drawn, express his opinion, or to decide as to the weight of evidence or the credibility of witnesses ; and his answers must be such as not to involve any such conclusions so drawn, or any opinion of the expert, as to the weight of the evidence, or the credibility of the witnesses.' ''

Doctor Dawson would not be permitted to give an expert opinion on facts of the case detailed to him by the patient herself, nor could he combine such statements with his own knowledge in part of the facts as a basis for an expert opinion.  (*A. T. & S. F. Rld. Co. v. Frazier*, 27 Kan. 463.)  He must have done so in this case, or else his expert opinion was based upon but part of the facts.  In either case, all parties were entitled to know the character of the data from which he drew his conclusion.  We are persuaded that these questions in the form in which they were put violate the rule with reference to the admission of expert evidence, and that it was error to permit them thus to be propounded.

Several special questions were submitted to the jury.

by the company.    Some of them, with their answers,
are as follows :

"1. Did plaintiff's wife in 1892 have an attack of
general peritonitis?    A. Yes."

"3. If you answer question No. 1 in the affirmative,
then was she, in consequence thereof, more subject to
recurring attacks of peritonitis?    A. We think not.

"4. At the time when Doctor McClintock per-
formed the surgical operation upon Mrs. Morris, was
it apparent from the condition in which he found her
ovaries and Fallopian tubes that their diseased condi-
tion had existed for more than thirty days?    A. We
think not.

"5. Had the diseased condition in which Doctor
McClintock found Mrs. Morris's Fallopian tubes and
ovaries, at the time of operating upon her, existed
more than thirty days?    A. The evidence has not
made it clear to our minds that there was any disease
in the Fallopian tubes and ovaries prior to December
5, 1895."

These answers were objected to by the defendant as
being evasive, not responsive to the questions, and
against the evidence, and the court was requested to
require the jury to make more definite and specific
answers thereto in accordance with the evidence.
This was refused and the refusal is alleged as error.

There was no contradiction in the evidence upon
the two questions propounded in interrogatories 3 and
4, and interrogatory 5 was but putting No. 4 in another
form.    While there was no evidence in terms author-
izing any other answer to be made to No. 3 except in
the affirmative, possibly a negative answer might
have been pardoned by allowing the jury to draw from
their own experience, and remembering that some-
what of speculation entered into its solution.    But it
called for either an affirmative or negative answer,
and not the evasive one given.    When we come to
consider Nos. 4 and 5, however, this evasiveness was

more pronounced, and the disregard of the evidence inexcusable.   If there was enough evidence upon which to find a general verdict in favor of the plaintiff, then these two questions should have been answered in the negative.   If under the evidence they should have been answered in the affirmative, then the general verdict should have been for the defendant.   A jury ought not to be permitted to juggle with the court and parties' rights in this way.   Taking all of these answers together, the object of this evasion seems clear.   The undisputed evidence was that the condition in which the organs of Mrs. Morris's body were found could not possibly have arisen in thirty days.   That one of her ovaries was completely destroyed, the other nearly so, that the diseased organs had been surrounded by an organized living tissue by nature in her effort to protect other parts from infection, was testimony more strong to the same point than even that of the witnesses.   These findings were material, and the evidence relative thereto undisputed.   It seems to us that the rule announced in *Railway Co. v. Davis,* 64 Kan. 127, 67 Pac. 441, compels a setting aside of the verdict herein.

It is strongly urged that under all the evidence no more than merely nominal damages should have been allowed.   While we do not so announce, yet this view impresses us so strongly that we are the more ready to conclude that the court should have required the jury at least to return unequivocal answers to these questions, and not permitted them to evade, for the purpose of sustaining a general verdict, where the evidence left no room for evasion.

The judgment of the court below will be reversed and the cause remanded for further proceedings.

All the Justices concurring.