No. 19,218.

CHARLES BALLARD, *Appellee,* V. THE KANSAS CITY, MEXICO & ORIENT RAILWAY COMPANY, *Appellant.*

SYLLABUS BY THE COURT.

1. NEGLIGENCE—*Personal Injuries—Amended Petition—No New Cause of Action Stated.* More than two years after the cause of action arose the petition was amended specifying more definitely a ground of negligence, which, however, was stated in very general terms in the original petition. *Held,* that no new cause of action was stated.

2. SAME—*Personal Injuries—Release Obtained by Fraud—Evidence.* The evidence and findings are held sufficient in this case to sustain the allegations of the reply to the effect that a release relied upon by the defendant was obtained by fraud and misrepresentation.

3. SAME—*Cause of Injury—Evidence of Physician Erroneously Admitted.* Under the circumstances of this case it was error to allow a physician who had examined the plaintiff for the first time more than two years after his injury to testify that in his opinion based upon the history of the case a fistula *in ano* from which he found the plaintiff suffering was caused by traumatic injury.

Appeal from Sedgwick district court, division No. 2; THORNTON W. SARGENT, judge. Opinion filed May 8, 1915. Reversed.

*Chester I. Long, A. M. Cowan,* both of Wichita, *S. W. Moore, John A. Eaton, D. W. Eaton,* and *H. J. Eaton,* all of Kansas City, Mo., for the appellant.

*John W. Adams,* and *George W. Adams,* both of Wichita, for the appellee.

The opinion of the court was delivered by

PORTER, J.: The defendant appeals from a judgment in plaintiff's favor for damages on account of personal injuries.

The plaintiff was in the employ of the railway company as a section hand. While returning from work

on January 7, 1908, he fell from a hand car and was injured. It was alleged in the petition that his injuries were caused by the failure of the defendant to furnish sufficient hand cars and because the car he was riding on was overcrowded with men. More than two years after the injury occurred the petition was amended specifying more fully the grounds of negligence and alleging that the hand car was in an unsafe condition because of broken cogs in the bull wheel, and that plaintiff's injuries were caused both by the overcrowded condition of the hand car and the broken cogs which made the car run unevenly. The first contention is that the cause of action was barred by the two-year statute. However, we find in the original petition a statement, though in very general terms, that the injury was caused in part by the fact that plaintiff was provided unsafe appliances with which to work. No motion was made to require the petition to be made more definite in this respect, and the point is not well taken. (See *Railway Co. v. Moffatt,* 60 Kan. 113, 55 Pac. 837.)

Plaintiff's wages were a dollar and seventy-five cents a day, and on the 15th day of January he was given a time check in payment for the work performed up to the time of his injury. On the 25th of January he executed a release relieving the company from all liability on account of the accident and accepted in payment $24.60. The railway company pleaded the release as a defense. In his reply plaintiff alleged that his signature was obtained through false representations and statements made to him by the agents of the defendant while he was in a weakened and debilitated condition and suffering from his injuries; that he went to defendant's office at that time solely for the purpose of collecting what was due him on account of wages and informed the agents of the defendant that he called to get the wages due him; that they told him they would figure up the amount, and shortly afterwards did so

and brought him the paper and said to him: "Sign the receipt for your wages"; that he understood at the time that it was merely a receipt for his wages. He testified that when he went to the railway office he could not see and could not read; that he supposed the paper he signed was for his wages; that he never had any conversation with regard to settling with the company for his injuries. On cross-examination he admits that he could not have worked more than six days in January, and says:

"I do not know how I came to the conclusion that I had $24.00 wages due me on the 25th. Afterwards I found that someone told me that they paid the men the same as though they were working. I do not know how I heard this, but I heard a man tell it. I did not hear anything of that kind before I was hurt. I always had to sign a paper to get my wages, but it was the paper I took away with me."

The evidence of the defendant shows that no signature of any kind is required when wages are paid except upon the check which the employee signs when he gets it cashed. The employees of the defendant who were present when the signature was obtained testified that no statements or representations were made to him at the time he signed the release, and that he came expressly for the purpose of making a settlement in order that he could go back to work. The jury found that on the 15th of January the company paid him all the wages due him for that month. They answered other special questions as follows:

"6. Did the plaintiff have an opportunity to read the release offered in evidence before he signed the same? Ans. No.

"8. Did plaintiff inform [the clerks in the office] or either of them that he could not read the document entitled 'Settlement and Release' or ask that the same be read to him before he signed it? Ans. No.

"12. Was plaintiff by any act of the defendant or its agents or servants prevented from reading the document entitled 'Settlement and Release' before he signed the same? Ans. Yes.

"13. Was any statement made by Davis or Gaffney to plaintiff concerning the character of the document entitled 'Settlement and Release' before plaintiff signed the same? Ans. No."

The law of the case on this point was given in the following charge:

"The burden of proof is upon the plaintiff to establish clearly, strongly and convincingly that the execution of the release was procured by fraud on the part of the defendant."

The only evidence offered to sustain the claim that the release was obtained through fraud and misrepresentation is the following testimony of the plaintiff:

"I told him that I came to get my wages. He said, 'All right, I will just fix you up in a few minutes.' He went away . . . and came back in five or ten minutes. He said, 'Sign this.' I said, "I can not see.' He said 'Just sign right on this line.' He had his finger down on it and I signed there. . . . He did not read it to me. . . . I supposed it was for my wages."

The defendant insists that the finding of the jury that plaintiff was prevented from reading the release by some act of the defendant is not only unsupported by the character of evidence required by the instruction which the court gave, but is, moreover, a direct contradiction to other findings which show that the jury did not believe the plaintiff's testimony respecting what occurred; and much stress is laid upon the answer to question No. 13, in which the jury found that no statement was made to plaintiff concerning the character of the document before he signed it; that he did not inform the clerks in the office that he could not read the paper nor ask that it be read to him. In the opinion of a majority of the court there was sufficient evidence to sustain the allegations of the reply to the effect that the release was obtained through fraud and misrepresenation.

There is no merit in the contention that plaintiff assumed the risk. He testified that he did not know

there were broken cogs on the bull wheel of the car, and there was some evidence tending to show that there were cogs missing from the wheel. If he was ignorant of the defect in the appliance he can not be held to have assumed the risk. (*Karns v. Railway Co.*, 87 Kan. 154, 123 Pac. 758.)

Some of the instructions with reference to assumption of risk where there has been a complaint and promise to repair are open to the objection that they omit all reference to the requirement that plaintiff must have relied upon the promise. (*Railroad Co. v. Mealman,* 78 Kan. 496, 97 Pac. 381.) In other instructions the court confused the doctrine of assumption of risk with that of contributory negligence, as in *Barber v. Railway Co.*, 94 Kan. 176, 146 Pac. 358. The eighth instruction charged, in substance, that previous instructions given respecting contributory negligence would not apply if the plaintiff made complaint to the foreman and received assurance that a new car would be furnished, "unless you find that the danger of riding upon the hand car, upon which the plaintiff was injured, was so glaring that a person of ordinary prudence would not have ridden upon it." This instruction authorized a verdict for plaintiff even though the jury found he was guilty of contributory negligence. Besides, while a promise to repair and a reliance thereon will generally avoid the defense of assumed risk, the doctrine that such a promise will excuse contributory negligence is one, so far as we are aware, not recognized by any of the decisions.

The jury awarded the plaintiff $1000 damages. The physicians who examined him found a scar on his head and another on one of his knees, but these were of little consequence, and were not considered by the physicians as evidence of any permanent injury. No physician who treated him at the time of the injury or near that time testified, but physicians who examined him at the first trial of the case, which took place about two years

after the accident, were called as witnesses. The examination of the physicians showed that at the time of the first trial and since then the plaintiff has suffered from a fistula *in ano*. There is no dispute in the medical testimony to the effect that a fistula of this kind is caused frequently by tuberculosis, sometimes by piles, but only in very rare instances by traumatic injury. The physicians called by the defendant testified that, in their opinion, it would be impossible for a fistula to result from an accident of this kind or from any of the injuries indicated by the scars on the plaintiff; that the position of the anus furnishes it a natural protection from physical injury; that they had never known of a fistula being caused by a traumatic injury except in rare instances where a blow was received in or near the anus from an instrument such as a pitchfork, or something of that character. The only evidence offered by the plaintiff tending even remotely to show that the fistula was caused by the fall from the hand car was the following:

The plaintiff himself testified:

"I went under the car. That was the last I knew until some time that night when I found myself home in bed at 223 South Main. My head hurt and my leg was paining me. My abdomen and my back were hurting and did so all during that night. I had a doctor that night. I do not remember his name."

He called two physicians, neither of whom had ever seen him or examined him until the first trial, which occurred about two or three years prior to the second trial. Doctor Shults testified:

"I made an examination of the plaintiff about three years ago and again last Saturday. I found a scar on his head near the occipital bone. I then examined the rectum and found a fistula. I found the same thing last Saturday. . . .

"Q. I will ask you if the condition in which you found the plaintiff at the time of your first examination that resulting fistula might have been caused by some kind of a traumatic injury, blow, fall? A. Well,

my opinion at the time and is yet that it was traumatic injury from the history of his case."

The court refused to strike this testimony from the case. The witness further testified: "I saw no marks of a traumatic injury."

Doctor Hickok, the other physician called by the plaintiff, testified:

"I met the plaintiff about two years ago and made an examination of him. . . . At that time he was suffering from a fistulous condition of the rectum. . . . I examined him again last Friday afternoon. . . .

"Q. Suppose that the plaintiff had an accident about five years ago last January and at that time and prior to that time he was a man of physical robust health and capable of performing any kind of manual labor and had prior to the accident no pain or trouble of any kind in the region of the groin or rectum and no other cause intervening, to what would you attribute his condition which you found there? A. I would attribute it to the injury. . . .

"As a rule fistula is not caused by an injury. . . . Fistula may be caused by a trauma; that is, by injury, but the injury must be around the bowels. Only on the head did I discover any place on plaintiff that would indicate an injury."

In *Betterment Co. v. Reeves,* 73 Kan. 107, 84 Pac. 560, it was held error to permit a physician to testify that, in his opinion, the injury was a permanent one, and that he based his opinion upon the history of the case. A similar answer by a physician was held not to constitute reversible error in a case decided at this session. (*Smith v. Railroad Co.,* post.) The cases are easily distinguishable. There was sufficient evidence to sustain the verdict and judgment in the case last cited independent of that given by the physician, and, moreover, it apeared that his opinion was based only in part upon the history of the case. It was conclusively established that the injury to the plaintiff in that case resulted in a fracture of the skull; the physician testi-

fying not only had the plaintiff under observation, but also had the benefit of an X-ray picture, which disclosed the nature and extent of the fracture, showing that a spicula of bone extended into the brain cavity. The physician was giving his opinion as to the effect upon plaintiff's health of an admitted injury, the cause of the injury not being in dispute.

Under all the circumstances of this case the admission in evidence of the opinion of the physician, based upon an examination years after the accident and upon the history of the case evidently acquired from the plaintiff, is regarded as prejudicial error.

The judgment is reversed, and the cause remanded for further proceedings.

PORTER, J. (dissenting from second paragraph of syllabus and corresponding portion of opinion) : The special finding that plaintiff was prevented from reading the release by some act of the defendant is not supported by any evidence which the jury believed. The special findings indicate, however, that the jury were determined to find that the release was not binding regardless of the evidence. The finding that no representations were made to the plaintiff when he signed the release, that he never informed the defendant that he could not read nor requested that the paper be read to him, show that the jury did not believe his testimony as to what occurred. It is very clear that when the release was executed the plaintiff either had no fistula or he knew that it was not caused by the fall from the hand car ; and for the slight injuries sustained and the loss of time the amount paid was evidently considered by him at that time as fair compensation.

Because of the lack of any substantial evidence to support the finding that the release was procured by fraud or misrepresentation, I think the judgment should be reversed and judgment ordered for the defendant.