No. 28,926.

Henry Lefebvre, *Appellant,* v. The Western Coal and Mining Company, *Appellee.*

(289 Pac. 394.)

Opinion filed July 5, 1930.

*Sylvan Bruner,* of Pittsburg, for the appellant.

*A. B. Keller, George R. Malcolm* and *C. A. Burnett,* all of Pittsburg, for the appellee.

The opinion of the court was delivered by

JOCHEMS, J.: This action was brought under the former workmen's compensation act. (R. S. 44-501 *et seq.*) The issues were decided in favor of the defendant, and plaintiff appeals.

An arbitrator was appointed, and in addition to the statutory questions usually submitted to the arbitrator the parties by agreement submitted all other questions in controversy between them. Seventeen questions were submitted. The first two were:

"(1) Whether or not an injury was sustained.
"(2) Whether or not such injury was accidental."

The seventeen specific questions were followed by a general paragraph in the order of appointment, reading:

. "And for such other and further findings on such other and further questions that may be suggested either by the plaintiff or defendant or both of them on the hearing before the arbitrator."

All matters which could possibly arise in the controversy between the parties were therefore submitted to the arbitrator for determination. Thirteen different hearings were held before the arbitrator at various times, and in all twenty-three witnesses testified in these hearings. The transcript of the record consisted of 470 pages and the abstract of record submitted to this court is 139 pages in length. From this it would appear that the matter was fully considered and all details which could possibly be brought out on either side were thoroughly presented to the arbitrator.

The plaintiff asked to have the district court review and modify the award of the arbitrator, and upon a hearing there submitted some additional testimony. The award of the arbitrator was affirmed.

The appellant insists the award should be set aside, and makes

numerous specifications of error. In support of these he contends, among other things: (1) that the arbitrator's findings against the plaintiff are contrary to the evidence and therefore amount to serious misconduct on the part of the arbitrator; (2) that plaintiff's testimony, medical and nonmedical, lay and expert, clearly established conditions existing in the working place occupied by plaintiff on March 12, 1925, that caused bad air to be present and that bad air brought about an accidental injury to plaintiff on that date by causing him to become prostrated and overcome and thereafter disabled; (3) that there was not any testimony introduced in behalf of defendant, either by lay witnesses or experts, medical or nonmedical, establishing that bad air was not present in plaintiff's working place on March 12, 1925, or establishing that bad air did not cause an accidental injury to plaintiff on that date or his continuing disability thereafter; (4) that the arbitrator was in effect guilty of misconduct in overruling plaintiff's objection to hearsay testimony of the witness Doctor Orr, in whose testimony it appeared he had based his opinion in part upon a report given him by Doctor Major; (5) that the arbitrator was guilty of serious misconduct in permitting Doctor Major to testify as to what was shown by an electrocardiogram which was taken at the hospital in Kansas City, without producing this cardiogram in court for the purpose of cross-examination and submission to plaintiff's experts for their opinion; and (6) that the arbitrator erred in receiving the testimony of Doctors Orr and Major over an objection of plaintiff that the appointment of those doctors was made by the arbitrator contrary to the provisions of the statute, and that the time and place of the examination made by such doctors was not a reasonable time and place for plaintiff to submit himself for examination, and because plaintiff was not able on account of his financial condition to have present at such examination a physician of his own choice.

The testimony offered on behalf of the plaintiff tended to show, in substance, that while working in his room down in the mine some time about two or three o'clock in the afternoon on March 12, 1925, he was overcome by carbon monoxide gas, commonly known and referred to about the mines as "bad air." That term will be used throughout the opinion. In some way he got outside his room, and then fell unconscious and was taken to the engine room of the mine. Medical assistance was called. The physician who was called to attend him at the time he was brought to the engine room, and two other physicians who treated him a few months thereafter, testified

that the plaintiff was suffering from the effects of bad-air poisoning. One lay witness testified that he observed bad air in plaintiff's room before and after plaintiff was overcome and that plaintiff had complained to him of bad air in his room before being overcome; that when plaintiff was found outside his room he was suffering severely, fighting for breath and manifesting other symptoms of injury from bad air; that he and his father went into plaintiff's room immediately after plaintiff's accident to tamp his shots and that they were made dizzy by air present in the room. Two other witnesses testified that four days after plaintiff's injury they visited his room with a state mine inspector; they described the condition in which the room was constructed and testified that it was not such as to produce a proper circulation of air, but was such as to bring about a situation that would cause bad air. The state mine inspector, Leon Besson, visited the room with these two witnesses about four days after the plaintiff claimed he was overcome by bad air, and testified that the construction of the room was not proper and did not provide for sufficient circulation of pure air; that there should have been another crosscut on the left of the room so that the air could circulate properly. Another witness testified on behalf of plaintiff that he worked in plaintiff's room an hour and a half on the day of the accident; that he observed evidences of bad air in the room prior to plaintiff's being overcome.

Against this evidence was the testimony of one witness who stated he worked in plaintiff's room several days after plaintiff claimed he was overcome by bad air and that the air was good in the room then. Another witness, who was a boss driver for the coal company, testified he was working at the mine when plaintiff claimed he was overcome by bad air; that prior to that time plaintiff had said something to him about bad air and asked him to make another crosscut; that he went into plaintiff's room and found that plaintiff had sufficient air and did not need any more air; that he did not need any crosscut; that plaintiff stated he was bothered some with asthma; that at the time plaintiff was complaining of bad air in the room the witness' observation showed that the air was all right. Another state mine inspector, J. M. Sherwood, testified that, judging from the report of the inspection of the room made by the other mine inspector (Besson), the construction was such as to furnish a sufficient amount of good air. He testified further that the bad air was stronger in the morning, and if present in sufficient quantity

to be injurious one could not work in the room all morning and part of the afternoon before being overcome.

On the hearing, after the medical testimony had been introduced on behalf of plaintiff, the defendant offered two physicians residing at Pittsburg, who testified that, in their opinion, if the plaintiff had been overcome by bad air he would have been overcome in the earlier part of the day; that they had found the same symptoms which plaintiff had in persons who had never been exposed to carbon monoxide or bad-air poisoning; that they could not tell exactly what was wrong with plaintiff, and both agreed the best thing to do was to have plaintiff placed in an institution where he could be given a thorough laboratory examination and could be kept under observation for several days, and in this way it might be determined just what was wrong with him.

Following the testimony of these physicians the defendant requested that the arbitrator appoint Doctor Orr, of Bell Memorial Hospital at Kansas City, to make an examination of plaintiff at the expense of the defendant. In the order of appointment Doctor Orr was authorized to call in such other physician or physicians as he might see fit. At the time this appointment was made plaintiff did not make any objection to the appointment nor to submitting to such examination, nor did he demand the right to have a physician of his own choice present at the examination. Defendant paid the expenses of plaintiff to Kansas City and while he was there, and also the expenses of the examination. The plaintiff was examined by Doctor Orr and by Doctor Major, who was called in by Doctor Orr. They made an examination extending from October 8 to 10, 1926. Doctor Orr testified that he had plaintiff under examination for two or three days and later had Doctor Major make a special examination. He also had plaintiff X-rayed by Doctor McDermott. Doctor Orr testified that plaintiff gave him a history of the case through an interpreter; then described the conditions he found in him. He sent him to Doctor Major for the purpose of having a detailed examination of his heart and lungs; stated he saw Doctor Major's report later; that in his opinion the condition of plaintiff was due to myocarditis and not to bad-air poisoning; that in most cases of bad-air poisoning the effects are of short duration; that some cases continue for a considerable length of time, but that he had not had an extensive experience with such cases; that he was not an expert on heart diseases and based his

opinion in part on the report of Doctor Major. He testified further that plaintiff was unable to work and that he did not know whether plaintiff would ever be able to work again; that he could not tell from his examination whether or not plaintiff had ever had any bad-air poisoning.

Doctor Major testified, in substance, that he is a specialist in diseases of the heart; that he examined the plaintiff at Bell Memorial Hospital and took an electrocardiogram of his heart. This cardiogram was not produced in court, and over the objections of the plaintiff, Doctor Major was permitted by the arbitrator to testify as to what it showed. Doctor Major testified that in his opinion plaintiff was not suffering from bad-air poisoning, based on the fact that he found the same condition of the heart in farmers, merchants, lawyers, doctors and office men; that he had examined a few persons suffering from bad-air poisoning and had treated two or three; that the patient ordinarily makes a rather quick recovery; that in his opinion plaintiff was not suffering from bad-air poisoning at the time of his examination, but was suffering from a heart disease known as myocarditis.

The above is a substantial review of the testimony. Upon this the arbitrator found that no accidental injury was sustained by the plaintiff on March 12, 1925, while working for the defendant, and disallowed plaintiff's claim.

Upon the foregoing situation the plaintiff asks that this court find the award of the arbitrator should be set aside on the ground that the finding was contrary to the evidence and therefore amounted to serious misconduct on the part of the arbitrator.

R. S. 44-528 sets forth the grounds for review and modification of an award. They are:

". . . That the award has been obtained by fraud or undue influence, or that the committee or arbitrator making the award acted without authority or was guilty of serious misconduct or that the award is grossly excessive or grossly inadequate, or that the incapacity or disability of the workman has increased or diminished. . . ."

In *Albertsen v. Swift & Co.*, 117 Kan. 337, 230 Pac. 1057, the court, in considering an award of an arbitrator, said:

"There was a conflict in the testimony, which left it open to different inferences as to the fact of adequacy, but we discover nothing that tends to show that the arbitrator was actuated by fraud, undue influence, or that the award was arrived at otherwise than by a fair and candid consideration of the evidence. Under the circumstances the finding of the arbitrator on the disputed

fact is final, but of course a finding cannot be final where gross inadequacy or other element which furnishes a ground for a review under the statute is shown. Where the arbitrator has in good faith made a finding of fact based upon conflicting testimony the court is not warranted in setting the award aside even if it might have come to a different conclusion than was reached by the arbitrator upon such evidence." (p. 339.)

In *Wood v. Eagle-Picher Lead Co.*, 121 Kan. 128, 245 Pac. 1015, the question of misconduct on the part of the arbitrator was raised and the court said:

"The defendant questions, as we have seen, the authority of the arbitrator, a claim without merit, and also serious misconduct of the arbitrator, and that the award was grossly excessive. In the state of the record it must be assumed that the court properly considered and decided the questions raised by the defendant. In the absence of a showing to the contrary the presumption must be indulged that the court has followed the law and given due consideration to the evidence applicable to questions that were open to review. As to the charge of misconduct on the part of the arbitrator, nothing was shown beyond the findings made. It devolved upon the defendant to establish the misconduct charged and not upon the plaintiff to show that the charge was unfounded. (*Roper v. Hammer*, 106 Kan. 374, 187 Pac. 858.) Nothing approaching misconduct was shown." (p. 130.)

In *Kinzer v. Gas Co.*, 110 Kan. 574, 204 Pac. 999, the court, in discussing misconduct on the part of the arbitrator, said:

"At the hearing before the arbitrator there was really but one vital controversy to be determined and that was a pure question of fact—whether the plaintiff had recovered from the effects of his injury. This necessarily had to be determined largely from the testimony of physicians. There was abundant medical evidence, including that of two doctors selected by the arbitrator by consent of the parties, that the plaintiff was merely a malingerer—and there was also evidence to the contrary. We find nothing whatever in any part of the record to suggest that the arbitrator acted without authority or that the award was arrived at otherwise than by a fair and candid consideration of the evidence. The hearing in the district court was a reëxamination of the same question of fact upon the same and some additional evidence, and the jury reached a different conclusion from that of the arbitrator. To sustain the finding of the jury in this situation would be merely to substitute its judgment for that of the arbitrator upon an issue of fact decided by him upon conflicting testimony. We do not think this is within the contemplation of the compensation act. The decision of the arbitrator upon issues properly before him is final, except for the limited review provided by the statute. (*Roper v. Hammer*, 106 Kan. 374, 187 Pac. 858; *Wilson & Co. v. Ward*, 110 Kan. 177, 202 Pac. 862.) It is true that gross inadequacy of an award is one of the grounds upon which it is authorized to be set aside, but if the pretended disability of the plaintiff was a sham the award was not adequate, and that fact having been determined by the arbitrator upon sufficient evidence, we do not

think the finding can be set aside without some showing of unfairness or misconduct." (p. 575.)

In this case the arbitrator has found, upon sufficient evidence, that the plaintiff did not sustain an accidental injury while in the employ of the defendant. This court might have reached a different conclusion from the arbitrator upon all the evidence shown in the record, but we cannot say that because the arbitrator has seen fit to render a decision based upon some of the evidence, that he has been guilty of misconduct by disregarding some of the other evidence in the record. The arbitrator was the trier of the facts, and because he saw fit to disregard a considerable portion of the testimony we cannot hold that he has been guilty of misconduct. We cannot determine from the record that he acted arbitrarily or capriciously or that his decision was the result of any serious misconduct on his part.

The appellant further claims that the arbitrator was guilty of misconduct in overruling plaintiff's objection to hearsay testimony of the witness Doctor Orr, in whose testimony it appeared that he had based his opinion in part upon a report given him by Doctor Major; that the arbitrator was likewise guilty of serious misconduct in permitting Doctor Major to testify concerning what was shown by an electrocardiogram taken at the hospital in Kansas City, without producing the cardiogram in court for the purpose of examination and submission to plaintiff's experts for their opinion.

It is error to permit a medical expert to base his testimony in part upon his examination and in part upon a report made to him by another physician. In *Murphy v. Edgar Zinc Co.*, 128 Kan. 524, 278 Pac. 764, 65 A. L. R. 1213, it was held:

"Where a physician called as an expert witness in a personal-injury case, after making a physical examination of the injured party, gives his opinion based upon such examination and also in answer to a hypothetical question which contains in detail the history of the case, and, after giving such opinion and answering such hypothetical question, upon cross-examination states that he bases his opinion partially upon the history of the case as related to him outside of court by the injured party, such expert evidence is thereby rendered incompetent, being based partly upon hearsay evidence, and should upon motion be stricken out and withdrawn from the consideration of the jury." (Syl. ¶ 3.)

*Miller v. St. Paul City Ry. Co.*, 62 Minn. 216, 64 N. W. 554, is a case where a physician testified that his opinion was based in part upon his examination and the history of the case as given him by the attending physician. It was held:

"It is not competent for a medical expert to give in evidence an opinion as to the cause of a person's physical condition or injuries, based in part upon information which he has derived from private conversations with a third party." (Syl. ¶ 2.)

Likewise it was error for the arbitrator to permit Doctor Major to testify as to what was shown by an electrocardiogram without producing it at the hearing. The doctor stated as his excuse that it was a part of the hospital records and could not be taken from the hospital, but that a copy could be obtained. We know of no rule of law that places hospital records in any privileged class. They can certainly be produced in court the same as the records of a corporation or any other records, corporate or private, which may be necessary to do full justice between litigants. The cardiogram should have been produced in court so that plaintiff could have used it for the purpose of cross-examination and for submission to his own medical experts for their examination and to enable them to testify as to their interpretation in the event they disagreed with the doctor who interpreted it on behalf of defendant.

In *Marion v. Coon Construction Co.*, 216 N. Y. 178, it was held:

"A proper foundation for the evidence of the expert should be laid by the production of the plates in court and by their introduction in evidence after competent proof as to their accuracy." (Syl. ¶ 3.)

In discussing this question in the opinion the court said:

"But we may go further and assume that the objection is sufficiently certain in form to raise the point that the witnesses were giving evidence for which no proper foundation had been laid by the production of the plates in court and by their introduction in evidence after competent proof as to their accuracy. We do not hold that it was incumbent upon the defendant to demand the production of the plates in order to have the benefit of this exception. If the objection was properly made no demand to produce the plates was necessary. We do not sanction a ruling of the trial court permitting a witness to give evidence, over a proper objection, of what he found to be shown by X-ray plates not produced in court and not shown by competent proof to be correct representations of the portion of the body examined by aid of the X-rays when it appears that the evidence thus admitted affects the substantial rights of the parties. Such ruling would be error." (p. 182.)

See, also, *Hammond v. Bloomington Canning Co.*, 190 Ill. App. 511.

However, while the above errors were committed in the admission of testimony, we do not find that their commission by the arbitrator constitutes a sufficient ground to set aside the award. It is to be noted that among the grounds enumerated in the statute

for setting aside an award of the arbitrator nothing is said about the admission of erroneous testimony. That is not made a specific ground for setting aside an award. Furthermore, R. S. 44-523 provides that "the committee or arbitrator shall not be bound by technical grounds of procedure or evidence." We cannot say, therefore, that the admission of this erroneous testimony by the arbitrator constituted serious misconduct.

The appellant makes the further contention that the arbitrator erred in appointing a physician to make an examination at Kansas City, on the ground that the examination thus provided was unreasonable as to time and place and that appellant had no opportunity to have a physician of his own choice present at the examination. We see no error in the arbitrator's conduct in this respect. All expenses of the trip of plaintiff to Kansas City, and of the examination, were paid by the defendant. At the time the arbitrator made the appointment of the Kansas City physician the appellant did not make any objection and did not ask to have any physician of his own present. Under these conditions his objection, coming, as it did, at the time the two doctors had appeared before the arbitrator, was not timely. If the appellant had wanted to object at all on the grounds set forth in the statute his objection should have been made at the time of the appointment made by the arbitrator, and then renewed at the time of the hearing.

From a review of the record and taking into consideration the various points urged by the appellant, we do not find any error in the decision of the district court approving the award.

The judgment is affirmed.

HARVEY, J., dissenting.