No. 38,816

Thelma Cain, *Appellee,* v. Homer Steely, *Appellant.*
(252 P. 2d 909)

Opinion filed January 24, 1953.

*Vincent F. Hiebsch,* of Wichita, argued the cause, and *Milton Zacharias, Kenneth H. Hiebsch, J. R. Sheedy, Yale W. Gifford,* and *Richard A. Render,* all of Wichita, were with him on the briefs for the appellant.

*Clyde M. Simon,* of Wichita, argued the cause, and *P. J. Warnick, Henry E. Martz, Alan B. Phares,* all of Wichita, were with him on the briefs for the appellee.

The opinion of the court was delivered by

WERTZ, J.; This was an action to recover for personal injuries sustained when two automobiles collided at the inter-section of two city streets. The plaintiff recovered and defendant appeals.

Except as they define the issues, the pleadings are unimportant and require little attention. All that need be said respecting them is that the petition alleged plaintiff was driving her automobile in a careful, prudent manner in a northerly direction on Sherman avenue, and had entered the intersection of Sherman avenue and Third street in Wichita, when defendant, traveling in an easterly direction on Third street at a reckless and negligent rate of speed, collided with plaintiff's automobile resulting in her injury; that the collision was due to the negligent acts of the defendant in exceeding the speed limit; failing to keep a lookout; failing to exercise ordinary care in order to avoid the accident, and failing to yield the right of way after she had entered the intersection first.

Defendant answered by way of general denial and alleged contributory negligence on the part of the plaintiff in failing to observe defendant's vehicle which was first to enter the intersection, and in her driving at an excessive rate of speed, and failing to yield the right of way, or to slow, swerve, or stop her automobile prior to striking defendant. The reply was a general denial.

Plaintiff's evidence in support of allegations contained in her petition may be summarized as follows:

The collision occurred on October 12, 1949, at the intersection of Sherman avenue and Third street in the city of Wichita. Sherman avenue runs north and south and is thirty feet wide at the intersection, while Third street runs east and west and is thirty-six

feet wide at the intersection. The two streets cross each other at right angles. Plaintiff was driving in a northerly direction on Sherman avenue, and defendant in an easterly direction on Third street. The intersection of the two streets is a so-called "open" intersection, having no stop signs or traffic controls of any type. Plaintiff testified that she observed defendant approaching from the west, glanced around to check traffic in other directions, and then returned her attention to defendant's car and continued watching it approach the intersection. She estimated her speed at 15 to 20 miles per hour, and defendant's speed at 20 to 25 miles per hour. She stated she had the impression that defendant slowed down. When she got to the sout curb line of Third street, defendant was the width of the sidewalk west of the intersection. She further stated she slowed down as she entered the intersection and as she was through the south side, and had entered the north portion of the intersection, defendant's car struck her on the left side near the rear panel, and that when she was three car lengths back from the intersection, defendant's car, approaching her from the left, was five car lengths back from the intersection; that the impact of the cars took place in the northeast quadrant of the intersection, and that her rear wheels were directly over the center line of Third street.

One Charles Younkin testified the plaintiff's front wheels entered the intersection of the streets before defendant's car, and that plaintiff was traveling 15 to 20 miles per hour, and defendant 25 miles per hour, that defendant's front bumper and grill collided with plaintiff's automobile at the left rear section of the car just at the door post; that he overheard defendant say he had not seen plaintiff.

This narrates the evidence on the part of the plaintiff with the exception of the medical testimony, which is hereinafter referred to. At the close of the plaintiff's evidence, defendant interposed a demurrer to the evidence on the ground that plaintiff's own testimony showed that she was guilty of contributory negligence as a matter of law. This demurrer was overruled and is assigned by defendant as error.

The defendant testified, in substance, that he was driving east on Third street and as he approached the intersection of Third and Sherman, he looked south and north and saw no vehicle approaching; he estimated his speed at 10 or 15 miles per hour as

he entered the intersection; that his right front fender struck plaintiff's automobile; he observed plaintiff's car just as the automobiles collided; his automobile struck the plaintiff's car on the hinges of the front door about the center of the car; that on the southwest corner of Sherman and Third street is an open lot, but his view was obstructed by a big truck parked on the west side of the street not far from the corner.

The case was submitted to the jury which, after deliberating, returned its general verdict in favor of the plaintiff, and against the defendant. At the same time the jury returned into court its answers to special interrogatories submitted by the court as follows:

"Q. 1. How far south of the south curb line of Third Street was the plaintiff's automobile when she first saw the defendant?

"A. 75 feet approximately.

"Q. 2. How far west of the west line of Sherman Avenue was the defendant's automobile when the plaintiff first saw it?

"A. 125 feet approximately.

"Q. 3. At the time when the plaintiff first saw the defendant's automobile state:

"(a) The rate of speed at which she was driving?

"A. Between 15 and 20 miles per hour.

"(b) The rate of speed at which the defendant was driving?

"A. Between 20 to 25 miles per hour.

"Q. 4. What rate of speed—

"(a) Was the plaintiff driving when she entered the intersection?

"A. Between 15 and 20 miles per hour.

"(b) Was the defendant driving when he entered the intersection?

"A. Between 20 to 25 miles per hour.

"Q. 5. Locate the point of impact of the plaintiff's and defendant's cars?

"(a) The distance north of a prolongation of the south curb line of Third Street.

"A. 15 feet north of the south curb line.

"(b) The distance east of a prolongation of the west line of Sherman Avenue?

"A. 18' East of West line of Sherman Avenue.

"Q. 6. Was the plaintiff able to observe the approach of the defendant's automobile at all times up until it entered the intersection?

"A. Yes.

"Q. 7. Was the defendant able to observe the approach of the plaintiff's automobile at all times up until it entered the intersection?

"A. Yes.

"Q. 8. Of what negligence, if any, do you find the plaintiff guilty?

"A. None.

"Q. 9. Of what negligence, if any, do you find the defendant guilty?

"A. (1) Failure to yield right-of-way.

    (2) Did not observe."

Defendant's motion for judgment on the answers of the jury to the special interrogatories notwithstanding the general verdict of the jury was overruled. To this ruling, defendant assigns error. The foregoing completes the evidence and pleadings necessary to determine the three issues raised on appeal.

Defendant first contends that the trial court erred in failing to sustain his motion to strike from the record the testimony of plaintiff's witness, Dr. Padfield, as being based partially upon past history of her injuries, as narrated by plaintiff to the physician, and partially upon examination by the physician.

In support of this contention, the defendant relies on the well-established rule stated in *Van Pelt v. Richards Paint & Paper Co.,* 136 Kan. 212, 14 P. 2d 632:

"It is well settled by former decisions of this court, which accord with the general rule, that a physician may not testify as to what a patient said in respect to the past history of the case, or the cause or duration of the injury. Neither can he give an opinion based partially upon his personal examination and partially upon what the patient told him in reference to the past history of the case, and also upon statements of third persons in reference thereto. (See *A. T. & S. F. Rld. Co. v. Frazier,* 27 Kan. 463; *Telegraph Co. v. Morris,* 67 Kan. 410, 73 Pac. 108; *Betterment Co. v. Reeves,* 73 Kan. 107, 84 Pac. 560; *Ballard v. Railway Co.,* 95 Kan. 343, 148 Pac. 764; *Hill v. Railroad Co.,* 113 Kan. 489, 491, 215 Pac. 310; *Priest v. Life Insurance Co.,* 116 Kan. 421, 427, 230 Pac. 529; *Murphy v. Edgar Zinc Co.,* 128 Kan. 524, 278 Pac. 764; *Lefebvre v. Western Coal and Mining Co.,* 131 Kan. 1, 289 Pac. 456.)" (p. 213.)

The purpose of the foregoing rule is to prevent the admission of self-serving declarations of patients, or of statements made by persons not under oath, which would be hearsay. The court and jury have a right to know how much of the opinion of a physician is based upon such self-serving declarations and hearsay statements, and how much is based upon his own examination of the patient or established by X-ray pictures or other competent evidence. Plaintiff concedes the foregoing rule, but contends that the physician's testimony taken as a whole clearly discloses that very little, if anything, in the way of the history of the case was considered, or could have been considered, by the witness. The real question in the instant case is whether the testimony of the physician, sought to be stricken out, violated this rule? We think not.

It is true that at one place in the record the physician was asked if he arrived at a conclusion of what was wrong with the plaintiff from his examination, and the history of the case as related by her to him. He stated he did. However, an examination of the record

discloses that only two things were revealed by the history given to him and they were—the accident occurred, and that immediately after the accident she was bruised all over the left side of her body, her shoulder and her left breast, and the soreness and discoloration of these injuries to her left chest and breast all had cleared up, and there was no indication of any pathology there, and that she suffered pain.

It is not every reference by a physician who is a witness to the history of a case that requires a reversal of judgment. (*State v. Keester,* 134 Kan. 64, 4 P. 2d 679.)

The record discloses no complete history was given by plaintiff, and the mentioned statements amounted to nothing more than information to give the physician a starting point for his examination, upon which examination he based his final conclusions. Plaintiff's complaints only tended to confirm his final opinion reached from the examination of the patient. He testified that he examined plaintiff thoroughly in February, 1951, and again on the day of the trial; that he saw her three, four, or five times, and when asked to refer to his records and tell the court and jury what he found wrong with the plaintiff and what he advised her to do, stated:

"A. *My physical examination revealed* a woman in apparent robust health and her examination was essentially negative with the following exceptions: She had a very sensitive area on the front of the left knee adjoining the patella, that is just as tender as a boil. She just could not stand to have me make any pressure over that area at all and she cannot kneel on that knee, just cannot stand the pain. If she steps on an uneven surface and turns her foot it causes her to have such severe pain in the knee that she almost falls from weakness of the pain. This is one result that developed from the injury to the soft tissues and nerves of the knee. There is no bony pathology of the knee. She has a very sensitive spot over the 2nd thoracic vertebrae and over the 10th thoracic vertebrae. She is extremely tender and I believe both of these injuries are probably due to her automobile accident in October, 1949 . . . I think that her back can be improved and probably cured if she is properly fitted with a brace and takes diathermy regularly. Should she follow this routine, it is my judgment that the pain and distress of her back will gradually ameliorate until at the end of approximately a year after instituting the treatment as I have outlined above, that she can be practically cured of all pain. I cannot assure her that results will be as good as I have pictured them, but as she now is, it is making a nervous wreck of her and some definite treatment procedure is necessary if she is to get well at all." (Italics supplied.)

The physician further testified that when he examined plaintiff on the day of the trial, there was some improvement in the condition of her knee. There was still definite pain, almost making her jump

up from under your thumb when making pressure there. The X rays showed an arthritis of the spine, and that is something that forms over a period of years and is not noticed by the patient until she has some accident. Without regard to the mentioned history, the record clearly discloses the physician made his findings and reached his conclusions as to the plaintiff's condition from his physicial examination of her, and from the examination of the X rays taken of her.

We find nothing in the record to indicate that the mentioned limited history had any bearing on the physician's findings and conclusions, made after his thorough examination, and certainly such statements could not have been prejudicial to the rights of the defendant. The motion to strike out the entire testimony was not well taken and was properly overruled.

In his brief, defendant discusses his second and third assignments of error together, and we will treat them likewise. He contends that his demurrer to the plaintiff's evidence should have been sustained on the ground that plaintiff's testimony showed her to be guilty of contributory negligence as a matter of law, and that the jury's answers to the special interrogatories submitted show plaintiff guilty of contributory negligence as a matter of law. Without reiterating the testimony, it may be said that the evidence disclosed that the plaintiff entered the intersection first. Therefore, although it has not been cited or relied upon specifically in plaintiff's brief or argument, we are bound to take judicial notice of the then existing provisions of our statute now appearing in G. S. 1949, 8-550, the pertinent part providing:

"(a) The driver of a vehicle approaching an intersection shall yield the right of way to a vehicle which has entered the intersection from a different highway."

. This statute is applicable to the case by virtue of the provisions of G. S. 1949, 8-507.

In testing the sufficiency of evidence as against a demurrer, the court shall consider all of plaintiff's evidence as true, shall consider that favorable to plaintiff, together with all reasonable inferences to be drawn therefrom, and disregard that unfavorable to plaintiff, and shall not weigh any part that is contradictory, nor weigh any differences between her direct and cross-examination, and if so considered, there is any evidence which sustains the plaintiff's case, the demurrer should be overruled. (*McCracken*

*v. Stewart,* 170 Kan. 129, 223 P. 2d 963; *Blankenship v. Fraker,* 173 Kan. 438, 249 P. 2d 683; *Fry v. Cadle,* 171 Kan. 14, 229 P. 2d 724; *Palmer v. The Land & Power Co.,* 172 Kan. 231, 239 P. 2d 960; *Harral v. Kent Corporation,* 168 Kan. 322, 212 P. 2d 356; *Hukle v. Kimble,* 169 Kan. 438, 219 P. 2d 434; *Revell c. Bennett,* 162 Kan. 345, 176 P. 2d 538; *Messinger v. Fulton,* 173 Kan. 851, 252 P. 2d 904, this day decided, and other decisions to the same effect listed in West's Kansas Digest, Negligence, § 136 [9] [10], Appeal and Error, § 927 [5], and Trial, § 156 [2] [3].)

It is also a well-established rule in this state that in determining whether a plaintiff is guilty of contributory negligence when tested by demurrer, the question must be submitted to the jury if the facts are such that reasonable minds might reach different conclusions thereon. (*Hill v. Hill,* 170 Kan. 721, 228 P. 2d 713; *McCracken v. Stewart,* supra; *Hukle v. Kimble,* supra; West's Kansas Digest, Negligence, § 136 [9]; 4 Hatcher's Kansas Digest [Rev. Ed.] Negligence, § 75.)

In the recent case of *Lawrence v. Kansas Power & Light Co.,* 167 Kan. 45, 204 P. 2d 752, involving somewhat similar facts and calling for application of identical principles, Chief Justice Harvey, speaking for this court, said:

"The legal questions here involved are so well settled in our law that they need not be labored. The actions were ones at common law in which plaintiffs sought damages alleged to have resulted from defendant's negligence, and defendant had pleaded contributory negligence of the plaintiffs. These are the kinds of actions in which each party is entitled to a trial by jury as a matter of right. They should not be converted into trials by the court. Negligence is the lack of due care. The instances are relatively rare when the facts are such that the court should say that as a matter of law the negligence alleged has been established. Before the court should make such a holding the evidence should be so clear that reasonable minds, considering it, could have but one opinion, namely, that the party was negligent. In these cases we think the contributory negligence of plaintiffs was clearly a question of fact for the jury." (p. 49.)

In view of what has been heretofore related we are not only willing to say the evidence fails to establish plaintiff guilty of contributory negligence as a matter of law, but have no difficulty in concluding, giving it the benefit of inferences to which it is entitled under the applicable rule, that it was of such character reasonable men, in the exercise of fair and impartial judgment, might reach different conclusions as to what was the proximate and legal cause of the collision. Under the decisions to which we

have referred, the trial court did not err in overruling the demurrer and submitting the case to the jury.

Defendant's further contention that the trial court erred in not sustaining his motion for judgment on the answers to special interrogatories is predicated on the proposition that the answers show plaintiff guilty of contributory negligence as a matter of law. It may be stated as a general rule of law that a motion for judgment on answers to special interrogatories notwithstanding the general verdict, concedes for that purpose that the answers are supported by the evidence. (*Taggart v. Yellow Cab Co. of Wichita,* 156 Kan. 88, 131 P. 2d 924; *Hubbard v. Allen,* 168 Kan. 695, 701, 215 P. 2d 647, and cases therein cited.)

In considering defendant's contentions, we must bear in mind the often repeated rule of this court that a general verdict imports a finding in favor of the prevailing party upon all the issues in the case not inconsistent with the special findings, which are to be given such a construction, if possible, as will bring them into harmony with the general verdict. (*Hubbard v. Allen,* supra; *Schroeder v. Nelson,* 157 Kan. 320, 326, 139 P. 2d 868; *Davis v. Kansas Electric Power Co.,* 159 Kan. 97, 108, 152 P. 2d 806; *Simeon v. Schroeder,* 170 Kan. 471, 474, 227 P. 2d 153.) In considering answers of the jury to special questions submitted, the court is not permitted to isolate one answer and ignore others, but all are to be considered together, and if one interpretation leads to inconsistency and another to harmony with the general verdict, the latter is to be adopted. (*Dick's Transfer Co. v. Miller,* 154 Kan. 574, 119 P. 2d 454; *Lee v. Gas Service Company,* 166 Kan. 285, 288, 201 P. 2d 1023.)

In order to sustain such a motion, it is not sufficient that there be some inconsistencies between the findings but they must be so contrary to the general verdict as to clearly compel the court to overthrow the verdict and to render a contrary judgment as a matter of law. (*Mehl v. Carter,* 171 Kan. 597, 237 P. 2d 240; *Taggart v. Yellow Cab Co. of Wichita,* supra; *Jelf v. Cottonwood Falls Gas Co.,* 162 Kan. 713, 178 P. 2d 992; *Morrison v. Hawkeye Casualty Co.,* 168 Kan. 303, 212 P. 2d 633.)

The main point urged by defendant why his motion should have been sustained is that the answers to questions 1, 3 and 4 convict plaintiff of contributory negligence, predicated on the theory that plaintiff first saw defendant's automobile approaching when she

was 75 feet from the intersection and that she continued at the same rate of speed until she entered the intersection; and the answer to question 6 that she observed the approach of defendant's automobile at all times until she entered the intersection.

In view of the well-established rules of law heretofore related, defendant overlooked the fact that the jury specifically found in answer to question 8 that such acts did not constitute negligence on the part of the plaintiff. And in the answer to question 9, the jury specifically found that the proximate cause of the collision and injury to the plaintiff was in the defendant's failure to yield the right of way, and failure to observe or keep a lookout. The record is replete with evidence that the plaintiff entered the intersection first, and under the aforementioned statute, it was the duty of the defendant to yield the right of way. Moreover, the evidence shows that the defendant did not observe the plaintiff until the time of the impact between the automobiles.

When the plaintiff was 75 feet from the intersection she first observed the defendant's car 125 feet west of the intersection. She continued to watch and entered the intersection, at which time defendant was still the width of the sidewalk west of the intersection. The plaintiff was not required to anticipate, with her car in the intersection, that defendant would, without watching or decreasing the speed of his automobile or yielding the right of way, drive into and against her automobile.

The rule is well-established that the operator of an automobile on a public street or highway may assume others, using the highway, will observe the laws of the road, and he is not guilty of contributory negligence in such an assumption unless and until he has knowledge to the contrary. (*DeGraw v. Kansas City & Leavenworth Transportation Co.*, 170 Kan. 713, 228 P. 2d 527; *Smith v. Salts*, 170 Kan. 313, 224 P. 2d 1025; *Fry v. Cadle*, supra.)

A review of the record and an examination of the answers to the special interrogatories will reveal that they are all in harmony with the general verdict. The general verdict was an acceptance of the plaintiff's version of the case. There is nothing in the answers to the special questions that is inconsistent with the general verdict, or compels a judgment in favor of the defendant. The trial court did not err in overruling defendant's motion and in entering judgment for the plaintiff on the general verdict.

The judgment of the lower court is affirmed.